United States Court of Appeals
Fifth Circuit

**F I L E D**

**December 3, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 04-60171
_____

JORGE N. LOPEZ; VIVIAN LOPEZ,

                                   Petitioners - Appellants,

                         versus

COMMISSIONER OF INTERNAL REVENUE,

                                   Respondent - Appellee.

_____

Appeal from the Decision
of the United States Tax Court
No. 8612-01
_____

Before KING, Chief Judge, JOLLY and DENNIS, Circuit Judges.

PER CURIAM:[*]

     Jorge N. Lopez and Vivian Lopez appeal, pro se, the United

States Tax Court's determination of deficiencies in their federal

income taxes for the years 1998 and 1999.  On appeal, the Lopezes

argue:  that the tax court erred in failing to shift the burden of

proof of the deficiency to the Commissioner under 26 U.S.C. §

7491(a); that the tax court erred in holding that the Lopezes did

not have a profit motive sufficient to make their Amway activities

a trade or business under Internal Revenue Code § 162(a); and that

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the tax court erred in calculating the amount of the deficiencies, a point that the Commissioner concedes.

We find no error in the tax court's determination that the Lopezes failed to meet the burden-shifting requirements in § 7491(a), and that the burden of proof properly remained on the Lopezes. Neither do we find error in the tax court's holding that the Lopezes' Amway activities were not conducted for profit. Finally, in accord with the Commissioner's concession that an error was made in computing the amount of the deficiencies, we must remand to the tax court for recalculation of the those deficiencies. Otherwise, we affirm the tax court's decision.

I

In 1998 and 1999, the Lopezes were distributors for Amway, a marketer of various personal and household products. Amway distributors purchase these products either for personal consumption or for resale to customers or downline distributors. For most distributors, gross income from Amway activities is based on a combination of retail sales and performance bonuses.

In their own Amway activities, which began in 1996, the Lopezes sold products at cost to both their downline distributors and their customers, which practice eliminated retail sales as a source of gross income. They chose instead to focus their efforts on developing a network of downline distributors to generate

2

performance bonuses.[1]  Relying on Amway brochures, the Lopezes concluded that they would need to achieve and maintain a monthly point value of 4,000 for their Amway activities to be profitable. In 1998 and 1999, the Lopezes' point value did not exceed 372 points in any month.

The only advice they sought for their Amway activities was from upline distributors, and when they received unsolicited advice from their accountant, they disregarded it.  During the years in question, Mr. Lopez was employed full-time as a petroleum engineer, and Mrs. Lopez was a homemaker.

The Lopezes timely filed federal income tax returns for both years, citing business losses of $18,388 in 1998 and $18,360 in 1999.  The Commissioner disallowed the deduction of these expenses after determining that the Lopezes' Amway activities were not entered into for profit.  The Commissioner further determined that the improper deductions resulted in a deficiency in the Lopezes' federal income taxes for 1998 and 1999.  The Lopezes petitioned the tax court for redetermination of the deficiency.

II

The tax court noted that the Commissioner's determinations as to a tax deficiency are presumptively correct, and the taxpayer generally bears the burden of proving otherwise.  Welch v.

---

[1] The tax court noted that the Lopezes recruited downline distributors largely from among their family and friends.

3

Helvering, 290 U.S. 111, 115 (1933). Moreover, because the Lopezes did not cooperate with the reasonable requests of the Commissioner for pre-trial meetings and for documents to be used at trial, the tax court held that the Lopezes did not satisfy the requirements outlined in 26 U.S.C. § 7491(a), which shifts the burden of proof to the Commissioner in some cases.

The tax court ultimately was not persuaded that the Lopezes' primary motive for conducting their Amway activities was for income or profit. It found that the conduct of their Amway activity "virtually precluded any possibility of realizing a profit." The Lopezes' lack of a business plan for recouping losses and achieving profitable levels of activity indicated the absence of a profit motive. In the face of four consecutive years of losses, the Lopezes still did not change their approach to increase the likelihood of earning a profit. The tax court further found that the Lopezes did not conduct market research to help them assess the potential profitability of their activities. It also noted that, although the Lopezes had no prior business experience, they accepted the advice of upline distributors rather than seeking advice from unbiased, independent business sources. The fact that the Lopezes' livelihood did not depend on the profitability of their Amway activities also weighed against a finding of a profit motive. Finally, the court concluded that the Lopezes spent much of their Amway-related time socializing with the family and friends

4

they had recruited as downline distributors. Finding that the Lopezes did not meet their burden of proof as to their profit motive, the tax court sustained the Commissioner's assessment of liability for the deficiency.

The tax court also accepted the Commissioner's calculation of the amount of the deficiency. The Commissioner now concedes that this calculation was incorrect because it did not subtract the cost of goods sold from gross receipts in determining the Lopezes' gross income.

III

A

The Lopezes first argue that the tax court erred in failing to shift the burden of proof to the Commissioner under 26 U.S.C. § 7491(a). That statute provides for shifting the burden of proof when the taxpayers have, inter alia, "cooperated with reasonable requests by the [Commissioner] for witnesses, information, documents, meetings, and interviews." 26 U.S.C. § 7491(a)(2)(B). The tax court refused to shift the burden of proof after finding that the Lopezes did not cooperate with the Commissioner's requests for a pretrial meeting and for information about documents to be used at trial.

The Lopezes argue that their failure to cooperate fully was a good faith mistake because they thought that, for a small tax case, they were not required to meet with opposing attorneys in order to

5

prepare for trial. They also claim to have been under the mistaken impression that, because theirs was a small tax case, they were not required to provide the Commissioner with the documents they intended to introduce into evidence before trial. The record, however, demonstrates that the Lopezes had ample notice of the requirement for meeting with the Commissioner's attorneys before trial, and for providing documents to be introduced into evidence to the opposition at least fifteen days before trial. We thus find no reversible error in the tax court's conclusion that the Lopezes' lack of cooperation with the Commissioner precluded shifting the burden of proof to the Commissioner.

B

After determining that the burden of proof properly remained with the Lopezes, the tax court held that the Lopezes' Amway activities were not a trade or business under § 162 of the Internal Revenue Code ("IRC") during the years at issue. On appeal, the Lopezes argue that this determination was clear error, and that they did have a profit motive requisite for satisfying § 162(a).

IRC § 162 allows deductions of ordinary and necessary expenses if those expenses are incurred in the operation of a trade or business. Section 162(a) further notes that to be engaged in a trade or business a taxpayer "must be involved in the activity with continuity and regularity and ... the taxpayer's primary purpose for engaging in the activity must be for income or profit."

6

Commissioner v. Groetzinger, 480 U.S. 23, 35 (1987). Section 183 of the IRC provides that, in relation to an activity not engaged in for profit, a taxpayer can take deductions which would be allowed if the activity were engaged in for profit, but only to the extent "that gross income derived from such activity for the taxable year exceeds the deductions allowable." 26 U.S.C. § 183(a).

Courts inquiring into whether a profit motive exists usually consider nine non-exclusive factors in the Treasury Regulations. These factors are: 1)the extent to which the taxpayer carries out the activity in a businesslike manner; 2) the expertise of the taxpayer or his advisors; 3) the time and effort expended by the taxpayer in carrying on the activity; 4) the expectation that assets used in the activity may appreciate in value; 5) the success of the taxpayer in other similar or dissimilar activities; 6) the taxpayer's history of income or losses attributable to the activity; 7) the amount of occasional profits, if any, which are earned; 8) the taxpayer's financial status; and 9) any elements of personal pleasure or recreation in the activity. Treas. Reg. § 1.183-2(b)(1)-(9). Courts give greater weight to these objective factors than to the taxpayer's statements regarding his or her intent. Westbrook v. Commissioner, 68 F.3d 868, 875 (5th Cir. 1995).

Whether a profit motive exists is a finding of fact, which the court reviews for clear error. Ogden v. Commissioner, 244 F.3d

970, 971 (5th Cir. 2001). We find clear error when we are "left with the definite and firm conviction that a mistake has been made." Id.

Here, the tax court correctly applied the factors set out in the Treasury Regulations § 1.183-2(b)(1)-(9). Although the record shows that the tax court was not compelled by the facts to find that the Lopezes lacked a profit motive, the Lopezes' arguments do not leave us with the "definite and firm conviction that a mistake has been made." At best, the Lopezes have made arguments to show that their Amway activities possibly had a profit motive. Their arguments do not show that the tax court clearly erred in viewing the evidence differently and finding that their Amway activities lacked the requisite profit motive.

Indeed, ample evidence supports the tax court's conclusion that the Lopezes lacked a profit motive in conducting their Amway activities. The record supports the tax court's findings that the Lopezes maintained unbusinesslike records, continued in an unprofitable endeavor without altering their methods for several years, did not depend for their livelihood on their Amway activities, and spent much of their Amway-related time socializing with family and friends.

Having reviewed the record and the briefs, we see no clear error in the tax court's findings and conclusions and therefore

8

AFFIRM its holding that the Lopezes did not have a profit motive for their Amway activities as required by IRC § 162.

C

The Lopezes further argue that the tax court incorrectly calculated their gross income for the relevant years by failing to subtract the cost of goods sold from their total income.[2] The Commissioner concedes that this calculation was incorrect. Accordingly, we will VACATE the calculation of the tax due for the years 1998 and 1999.

IV

In sum, we AFFIRM the tax court's determination that the burden of proof remained with the Lopezes because the Lopezes did not satisfy the requirements of 26 U.S.C. § 7491(a). We AFFIRM the tax court's holding that the Lopezes lacked a profit motive in their Amway activities. We VACATE the tax court's calculation of the Lopezes' gross income and REMAND this case to the tax court for the limited purpose of recomputing the Lopezes' federal income tax deficiencies.

AFFIRMED in part, VACATED in part and REMANDED.

---

[2] The Lopezes also argued in their brief that they were entitled to deductions for charitable contributions. This argument is precluded by the fact that their total itemized deductions were less than the standard deduction in 1998 and 1999. Therefore, they are not entitled to any additional deduction for their charitable contributions.