121 T.C. No. 1


UNITED STATES TAX COURT


ALPHONSE MOURAD, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7873-01.                    Filed July 2, 2003.


     In 1996, P's wholly owned S corporation filed a
petition for bankruptcy reorganization.  The U.S.
Bankruptcy Court appointed an independent trustee to
administer the bankruptcy estate.  In 1997, a plan of
reorganization was confirmed, and the S corporation
sold its principal assets.  The bankruptcy trustee
filed a Form 1120S for the S corporation's 1997 tax
year, which reported a large gain.  P failed to file
his individual income tax return for 1997.  From
information disclosed by the S corporation on its 1997
return, R determined P's income and issued a notice of
deficiency.

     Held:  The filing of a bankruptcy petition for
reorganization neither terminates an S corporation's
tax status nor creates a separate taxable entity.  P is
liable for tax on the income of the S corporation.

*Held*, *further*, P failed to follow the procedures necessary to claim low-income housing tax credits.

*Held*, *further*, statements made by R's representative at a bankruptcy plan confirmation hearing did not waive R's determination that P owes income taxes for 1997.

Alphonse Mourad, pro se.

Steven M. Carr, for respondent.

RUWE, *Judge*:  Respondent determined a $189,745 income tax deficiency for petitioner's 1997 tax year.  The issues presented to the Court are:  (1) Whether petitioner should be taxed on gain from the sale of assets by his S corporation during the corporation's bankruptcy proceeding; (2) whether petitioner is entitled to low-income housing tax credits; and (3) whether respondent waived his claims for payment of petitioner's 1997 income tax.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts, the second stipulation of facts, and the accompanying exhibits are incorporated herein by this reference.[1]  At the time the petition was filed, petitioner resided in Massachusetts.

---

[1]Respondent objected to many of the exhibits on the basis of relevancy and/or hearsay.  Even if we accept those exhibits, they would have no effect on our findings of fact or the outcome of this case.

During the year at issue, petitioner was the sole shareholder of V&M Management, Inc., an S corporation (V&M Management).[2] V&M Management owned and operated a 275-unit apartment complex known as Mandela Apartments in Roxbury, Massachusetts.[3]

On January 8, 1996, V&M Management filed a petition for reorganization pursuant to chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court, District of Massachusetts, Boston. The bankruptcy court appointed an independent trustee, Stephen S. Gray (the bankruptcy trustee), to administer the reorganization. In the bankruptcy action, the Commissioner filed proofs of claim for employment taxes due and owing by V&M Management.

On September 26, 1997, the bankruptcy court confirmed a plan of reorganization (the plan). The cornerstone of the plan was the sale of Mandela Apartments and its related property. Because the plan called for full payment of the employment taxes owed by V&M Management, the Commissioner had no objection to the plan. On or about December 18, 1997, the bankruptcy trustee sold Mandela Apartments and its related property for $2,872,351.

---

[2]Petitioner is also listed as owning 100 percent of V&M Management on its 1998 and 1999 Forms 1120S, U.S. Income Tax Return for an S Corporation. V&M Management elected to be taxed as an S corporation on Jan. 1, 1984.

[3]V&M Management d.b.a. Vasquez Development Co., Inc., acquired title to Mandela Apartments from the Secretary of Housing and Urban Development on Dec. 11, 1981.

On behalf of V&M Management, the bankruptcy trustee prepared and filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for tax years 1995 through 1999.[4]  The 1997 Schedule K-1, Shareholder's Share of Income, Credits, Deduction, etc., reported that petitioner realized a gain of $2,088,554 from the sale of the Mandela Apartments' property.[5]

Petitioner did not file individual income tax returns for 1996 and 1997.  On August 13, 2001, respondent issued a notice of deficiency for the 1997 tax year, which determined that petitioner received income of $2,088,554.  Respondent's determination was based on information reported on V&M Management's 1997 Schedule K-1.  In determining the amount of petitioner's deficiency, respondent allowed deductions of $1,402,543.[6]  Respondent determined that petitioner owed $189,745 in income taxes for 1997.

V&M Management has never claimed low-income housing credits on any of its returns.  V&M Management never applied for an allocation of low-income housing credits and never received Form 8609, Low-Income Housing Credit Allocation Certification, from

[4]V&M Management's 1997 return was signed by the bankruptcy trustee on Sept. 1, 1998.

[5]The 1997 Schedule K-1 indicates that $1,794,602 was a net sec. 1231 gain and $293,952 was a net long-term capital gain.

[6]Respondent carried forward an interest expense deduction of $965,226 and a net operating loss of $433,167.  Additionally, respondent allowed $4,150 as a standard deduction.

the State of Massachusetts.  Neither V&M Management nor petitioner ever attached Form 8609 to their tax returns. Petitioner never claimed low-income housing credits on his personal returns for the years during which V&M Management owned Mandela Apartments.

OPINION

A.    Income Imputed From the S Corporation

Petitioner does not question respondent's calculation of income.  Rather, petitioner argues that he should not be treated as a shareholder of an S corporation after V&M Management filed a petition with the bankruptcy court.

One of the benefits of S corporation tax status is that income earned by the entity escapes corporate-level taxation. See sec. 1363.[7]  Thus, an S corporation's income passes through the entity and is, generally, taxed only at the shareholder level on a pro rata basis.  See secs. 1363, 1366.

An election to be an S corporation continues until terminated.  See sec. 1362(d).  An S corporation election terminates in one of three ways:  (1) Revocation by the shareholder(s); (2) the entity ceases to be a "small business corporation"; or (3) the entity's passive income exceeds 25 percent of its gross receipts for the previous 3 consecutive

_____

[7]Except as indicated to the contrary, all section references are to the Internal Revenue Code for the year in issue.

years.  See id.  The Code provides only these three ways by which the S corporation election may be terminated.  See sec. 1362(d). Petitioner makes no claim that either the first or third method of termination applies.  Thus, we must determine whether the filing of the chapter 11 bankruptcy petition terminates V&M Management's status as a "small business corporation".  Section 1361(b) provides in part:

> SEC. 1361(b).  Small Business Corporation.--
>
> (1) In general.--For purposes of this subchapter, the term "small business corporation" means a domestic corporation which is not an ineligible corporation and which does not--
>
>> (A) have more than 75 shareholders,
>>
>> (B) have as a shareholder a person (other than an estate and other than a trust described in subsection (c)(2)) who is not an individual,
>>
>> (C) have a nonresident alien as a shareholder, and
>>
>> (D) have more than 1 class of stock.

Section 1361(b)(2) describes an "ineligible corporation" as:

> any corporation which is--
>
>> (A) a financial institution which uses the reserve method of accounting for bad debts described in section 585,
>>
>> (B) an insurance company subject to tax under subchapter L,
>>
>> (C) a corporation to which an election under section 936 applies, or
>>
>> (D) a DISC or former DISC.

The filing of the bankruptcy petition had no impact on V&M Management's qualification as a "small business corporation" under section 1361(b). Petitioner was the only shareholder of V&M Management during the year in issue and remained the only shareholder through 1999.

Neither party cites any previous court opinions that have decided whether or not an S corporation's status is terminated by virtue of filing a chapter 11 petition in bankruptcy. This appears to be an issue of first impression.

The issue of whether the filing of a bankruptcy petition causes the termination of an S corporation's status was addressed in In re Stadler Associates, Inc., 186 Bankr. 762 (Bankr. S.D. Fla. 1995). In that case, the sole shareholder of the debtor corporation contended that the filing of a bankruptcy petition terminates S corporation status since the shareholder lost control of the debtor. Disagreeing, the bankruptcy court held that the filing of a petition in bankruptcy does not cause the corporation to cease to be a "small business corporation" or otherwise terminate the S corporation status. The bankruptcy court held that "rules of statutory construction prohibit this Court from adding a fourth method of terminating an S corporation election where the Internal Revenue Code clearly sets forth the aforementioned three methods". Id. at 764. We agree.

In re Stadler Associates, Inc. involved a voluntary petition under chapter 7 of the Bankruptcy Code. In this case, V&M Management filed a voluntary petition under chapter 11 of the Bankruptcy Code. Although the remedies sought in a chapter 7 liquidation proceeding are different from those in a chapter 11 reorganization proceeding, this difference does not affect application of the rationale stated in In re Stadler Associates, Inc. to both types of bankruptcy proceedings.

Likewise, no new or separate taxable entity was created by the filing of the bankruptcy petition. Section 1399 provides: "Except in any case to which section 1398 applies, no separate taxable entity shall result from the commencement of a case under title 11 of the United States Code." Section 1398 is inapplicable since it applies exclusively to individuals. The legislative history explains:

> The bill provides that no taxable entity results from commencement of a bankruptcy case involving a partnership or corporation. This rule * * * reverses current Internal Revenue Service practice as to partnerships, under which the estate of a partnership in bankruptcy is treated as a taxable entity (Rev. Rul. 68-48, 1968-1 C.B. 301) * * * [H. Rept. 96-833, at 20-21 (1980).[8]]

---

[8]See also 11 U.S.C. sec. 346(c) (2000) ("The commencement of a case under this title concerning a corporation or a partnership does not effect a change in the status of such corporation or partnership for the purpose of any State or local law imposing a tax on or measured by income.").

We hold that a bankruptcy petition filed by an S corporation does not cause the corporation to cease being a "small business corporation" or otherwise terminate its status as an S corporation. The tax treatment of the S corporation is the same whether or not the entity filed for bankruptcy.[9]

Petitioner argues that it is unfair to tax him on passthrough income earned by his solely owned S corporation while it was in chapter 11 bankruptcy reorganization because he "received no actual benefit from the use of the property". We disagree. Since electing S corporation status, petitioner has enjoyed passthrough, one-level taxation and corporate liability protection. V&M Management's income tax returns show that over the years petitioner had substantial income from V&M Management and that the S corporation's business property was depreciated, thus reducing the amount of petitioner's taxable income. Furthermore, petitioner testified that he was personally liable for the debts of V&M Management. The proceeds from the sale of Mandela Apartments reduced V&M Management's debt liability. See Schindler v. Walker (In re Harbor Village Dev.), 75 AFTR 2d 95-508, 95-1 USTC par. 50,032 (Bankr. D. Mass. 1994) ("the income [while in bankruptcy] will be used to satisfy claims of the Debtor's creditors"). Since no separate taxable entity was

---

[9]Accord Schindler v. Walker (In re Harbor Village Dev.), 75 AFTR 2d 95-508, 95-1 USTC par. 50,032 (Bankr. D. Mass. 1994) (partners, and not bankrupt partnership, were liable for taxes from income generated while partnership in ch. 11 bankruptcy).

created when V&M Management filed for bankruptcy and the S
corporation status was not otherwise terminated, the passthrough
treatment of V&M Management's income realized during bankruptcy
is correctly imputed to petitioner.

B.    Low-Income Housing Credit

Petitioner argues in the alternative that if the S
corporation status of V&M Management is not terminated by the
filing of a bankruptcy petition, he is entitled to low-income
housing credits which offset his income tax liability generated
from the sale of Mandela Apartments.  Section 38 provides for a
general business credit, which includes a low-income housing
credit.  Section 42 describes the method and manner taxpayers
must use to compute their low-income housing credit.  Petitioner
failed to claim the credit while V&M Management owned the
property for which he seeks the credit.  Only now, after the
purported qualifying property has been sold, does petitioner seek
a credit.

Petitioner's failure to comply with any of the procedures
and requirements stated in the statutes and regulations granting
the low-income housing credit makes him ineligible for it.  To be
eligible for low-income housing credits, a taxpayer must first
obtain permission from the appropriate State or local agency.
See sec. 42(h); sec. 1.42-1T(a)(2), Temporary Income Tax Regs.,

52 Fed. Reg. 23432 (June 22, 1987) ("Generally, the low income housing credit determined under section 42 is allowed and may be claimed for any taxable year if, and to the extent that, the owner of a qualified low income building receives a housing credit allocation from a State or local housing credit agency."). As the regulations explain, the taxpayer is not entitled to a low-income housing credit "in any year in excess of an effective housing credit allocation received from a State or local housing credit agency." Sec. 1.42-1T(e)(1), Temporary Income Tax Regs., 52 Fed. Reg. 23437 (June 22, 1987); see sec. 42(h). "Housing credit allocations are deemed made when Part I of IRS Form 8609, Low-Income Housing Credit Allocation Certification, is completed and signed by an authorized officer of the housing credit agency".[10] Sec. 1.42-1T(d)(8), Temporary Income Tax Regs., 52 Fed. Reg. 23437 (June 22, 1987). Furthermore, the taxpayer must file a completed Form 8609 and a Form 8586, Low-Income Housing Credit, with his tax return for each year the credit is claimed. Sec. 1.42-1T(h)(2), Temporary Income Tax Regs., 52 Fed. Reg. 23439 (June 22, 1987). Neither V&M Management nor petitioner ever applied for an allocation of low-income housing credits, received Form 8609, or attached Form 8609 to its or his tax

[10]The credit-seeking taxpayer must similarly complete Part II of Form 8609. See sec. 1.42-1T(h)(2), Temporary Income Tax Regs., 52 Fed. Reg. 23439 (June 22, 1987).

return.  Under these circumstances petitioner is ineligible for low-income housing credits.

C.   Alleged Waiver of Petitioner's Income Taxes

Lastly, petitioner argues that respondent "waived all claims for payment [of taxes] * * * at the September 26, 1997 bankruptcy court confirmation hearing."  At the plan confirmation hearing, counsel for the Commissioner withdrew a previous objection because the confirmed plan called for the full payment of employment taxes due and owing by V&M Management.  There were no claims against V&M Management for income tax liabilities because an S corporation is not generally liable for income tax.

We agree with respondent that petitioner is obviously confusing V&M Management with himself.  The record demonstrates that V&M Management, and not petitioner, filed a petition for reorganization in bankruptcy.  The Commissioner filed proofs of claim in the bankruptcy case for unpaid employment taxes.  It was these taxes, owed by V&M Management, which were at issue in the bankruptcy proceeding.  A plan of reorganization was confirmed by the bankruptcy court to which the Commissioner had no objection.

In contrast, here, petitioner filed a petition seeking redetermination of a deficiency of income taxes determined against him.  V&M Management is not a party to these proceedings. Although the amount of the deficiency that respondent determined is directly related to the sale of the Mandela Apartments by V&M

Management, the statements respondent's representative made during the bankruptcy confirmation hearing did not refer to, and had no effect on, petitioner's income tax liability for the year at issue. Accordingly, we hold that respondent did not waive his claim that petitioner owes income tax for 1997.

D.   Conclusion

The filing of a bankruptcy petition does not terminate V&M Management's S corporation election, and the income of V&M Management is taxable to petitioner. Petitioner is not entitled to low-income housing tax credits for 1997, and respondent did not waive any claim that petitioner is liable for income tax for the year 1997.

Decision will be entered for respondent.