# United States Court of Appeals
## For the First Circuit

No. 03-2367

ALPHONSE MOURAD,

Petitioner, Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE,

Respondent, Appellee.

ON APPEAL FROM THE DECISION OF
THE UNITED STATES TAX COURT

Before

Torruella, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lynch, Circuit Judge.

Lester E. Riordan III for appellant.
Teresa E. McLaughlin, with whom Eileen J. O'Connor, Assistant
Attorney General, Richard Farber, and Kenneth W. Rosenberg, were on
brief for appellee.

October 20, 2004

**COFFIN, Senior Circuit Judge**.  This case requires us to consider whether a company's filing of a bankruptcy petition and the appointment of a trustee automatically terminates the election by its shareholders of "S Corporation" status under the Internal Revenue Code.  See 26 U.S.C. § 1361.  Specifically at issue is a nearly $200,000 income tax deficiency assessed against appellant Alphonse Mourad stemming from the sale of assets of a corporation of which he was the sole shareholder.  The United States Tax Court ruled that Mourad was personally liable for the tax because his company, V & M Management, Inc., was an "S Corporation" whose gains and losses are passed through to shareholders.  See Mourad v. Comm'r, 121 T.C. 1, 8 (2003).  The court rejected appellant's argument that V & M's bankruptcy filing had terminated the company's S election, and it further concluded that appellant was not entitled to a low-income housing credit to offset the tax liability.  On appeal, appellant challenges both the assessment and the denial of the credit.  As we find no legal or factual error, we affirm.

## I. Background

V & M Management owned and operated a 275-unit apartment complex known as Mandela Apartments in Roxbury, Massachusetts, from 1981 until 1997.  The property was sold in December 1997 for more than $2.8 million as part of a reorganization plan developed by an independent trustee after V & M filed a petition for reorganization

-2-

under Chapter 11 of the Bankruptcy Code.   For a number of years before the bankruptcy filing, which occurred in January 1996, V & M had been operated as an "S Corporation," a status available under Subchapter S of the Internal Revenue Code, 26 U.S.C. §§ 1361-1379.

Subchapter S was added to the Tax Code to lessen the tax burden on small businesses and to eliminate disincentives for them to adopt the corporate form.  Bufferd v. Comm'r, 506 U.S. 523, 524-25 (1993); see also Durando v. United States, 70 F.3d 548, 551 (9th Cir. 1995) ("Congress created S corporations to give small businesses the benefits of the corporate form, such as limited liability for shareholders, without the disadvantages of corporate taxation.").  When the shareholders of a qualified corporation make a Subchapter S election, they switch from a multiple-level taxation system to

> a "pass-through" taxation system under which income is subjected to only one level of taxation. . . .  The corporation's profits [and losses] pass through directly to its shareholders on a pro rata basis and are reported on the shareholders' individual tax returns.  See § 1366(a)(1)(A).

Gitlitz v. Comm'r, 531 U.S. 206, 209 (2001) (citing Bufferd, 506 U.S. at 525).[1]

---

[1] The income of corporations usually is subject to two levels of taxation; it is taxed when earned by the corporation, and the same income is taxed again when it is distributed to shareholders in the form of dividends.  See 26 U.S.C. §§ 301-385; Camilla Berit Galesi, "Shareholders' Rights Regarding Termination of a Debtor Corporation's S Status in a Bankruptcy Setting," 10 J. Bankr. L. & Prac. 157, 159 (2001)["Shareholders' Rights"].

Thus, for some number of years, V & M's income and any offsetting expenses, including depreciation of the business's property, were passed through to appellant. Appellant contends that that arrangement – and the S corporation status that authorized it – should have come to an end when the trustee took over V & M and he no longer had control of the business. In the alternative, he argues that, if he must bear the tax liability of the property sale, he is entitled to a low-income housing credit obtained by the trustee on behalf of the new owners of the property.

The appellee, the Commissioner of the Internal Revenue Service, maintains that V & M's S corporation election and the pass-through system of taxation remained in effect for the 1997 tax year, and that appellant does not qualify for a credit.[2] We address each of these issues in turn.

A. Termination of Subchapter S status

The Tax Code provides that a shareholders' election to take S corporation status remains in effect until it is terminated under 26 U.S.C. § 1362(d). See 26 U.S.C. § 1362(c). Subsection (d) identifies three ways in which termination may occur: (1) if more than fifty percent of the corporation's shareholders vote to revoke

_____

[2] The trustee prepared and filed S corporation returns on behalf of V & M for the years 1995 through 1999, and on the 1997 form reported that appellant had realized a gain of $2,088,554 from the sale of Mandela Apartments. Appellant did not file individual federal income tax returns for 1996 or 1997.

the election; (2) if the business ceases to be a "small business corporation," or (3) if the business's passive investment income exceeds 25 percent of gross receipts for three consecutive years (and the business earned profits each of those years). See id. §§ 1362(d)(1), (2), (3).

Appellant asserts that section 1362(d)(2) is applicable here and that V & M's S corporation status ended when it entered bankruptcy because it no longer met the requirements of a "small business corporation." Under the Tax Code, a small business corporation must be a domestic corporation with fewer than 75 shareholders, all of whom must be individuals and none of whom may be a nonresident alien, and it may have only one class of stock. See id. § 1361(b). Appellant argues that, because the trustee took control of the company for the benefit of its creditors, appellant no longer was its real owner. This transfer of power, he maintains, left V & M with new shareholders – the corporate creditors – who were not individuals, and also generated more than one class of stock because of the creditors' "different rights and preferences."

We reject appellant's theory that his tenure as shareholder ended when the trustee took over day-to-day operation of V & M. A bankruptcy trustee steps into the shoes of the debtor - in this case, the corporation - and the corporation and its shareholders are "separate entities, including 'in respect of tax problems,'"

Durando, 70 F.3d at 552 n.9 (quoting New Colonial Ice Co. v. Helvering, 292 U.S. 435, 442 (1934)); see also Bangor Punta Operations, Inc. v. Bangor & Aroostook R.R. Co., 417 U.S. 703, 713 (1974) ("a corporation and its shareholders are deemed separate entities for most purposes," but the corporate form may be disregarded "where it is used to defeat an overriding public policy"); Silverman & Sons Realty Trust v. Comm'r, 620 F.2d 314, 317 (1st Cir. 1980) (noting "general rule that corporation and stockholders are considered separate entities for tax purposes"). Although appellant's equity interest in V & M may have been without value by the time the bankruptcy filing occurred, see In re V & M Mgmt., Inc., 321 F.3d 6, 8 (1st Cir. 2003), neither the trustee nor the creditors displaced him as sole shareholder. Cf. Commodity Futures Trading Comm. v. Weintraub, 471 U.S. 343, 353 (1985) ("[T]he trustee plays the role most closely analogous to that of a solvent corporation's management."); In re Sanders, 969 F.2d 591, 593 (7th Cir. 1992) ("[A] bankruptcy trustee succeeds only to the title and rights in property that the debtor had at the time [it] filed the bankruptcy petition.").

Bankruptcy law, moreover, explicitly provides that any income of the estate in a bankruptcy case, with certain exceptions not asserted as relevant here, "may be taxed only as though such case had not been commenced," see 11 U.S.C. § 346(c)(1), reinforcing the view that a Chapter 11 bankruptcy filing does not change the tax

relationship between a debtor corporation and its shareholders. This conclusion is further buttressed by the scant case law that exists. In In re Stadler Assocs., Inc., 186 B.R. 762 (Bankr. S.D. Fla. 1995), the sole shareholder of an S corporation that had filed a petition for relief under Chapter 7 of the Bankruptcy Code argued that the bankruptcy filing had terminated the debtor's S corporation status. The bankruptcy court disagreed, holding that termination was limited to the three methods set out in section 1362(d) and that none of those had occurred. See id. at 764.

Other courts, while not directly considering whether a bankruptcy filing automatically ends Subchapter S status, implicitly have adopted Stadler's view in the course of discussing whether shareholders may choose to terminate S status pursuant to section 1362(d) when a bankruptcy filing is anticipated. See, e.g., In re Bakersfield Westar, Inc., 226 B.R. 227, 235-37 (9th Cir. BAP 1998); In re Trans-Lines West, Inc., 203 B.R. 653, 659-60 (Bankr. E.D. Tenn. 1996); see also "Shareholders' Rights," 10 J. Bankr. L. & Prac. at 176-80. Such an inquiry would be unnecessary if bankruptcy automatically effected termination.

Having concluded that V & M did not convert to a standard C corporation by virtue of a change in its shareholders, we likewise reject appellant's assertion that the company lost its small business classification based on a change in the classes of stock.

There is no evidence in the record that shareholders other than appellant existed or exercised rights different from his.

Although we do not face in this case the question whether shareholders should be permitted to terminate S status pursuant to section 1362(d) when a bankruptcy filing is imminent or has occurred, and thus need not consider the competing equities at issue, we recognize the logic in appellant's contention that it is unfair to assess tax liability on shareholders who do not receive the income on which they are obliged to pay the tax. See "Shareholders' Rights," 10 J. Bankr. L. & Practice at 157; Richard A. Shaw, "Taxing Shareholders on the Income of an S Corporation in Bankruptcy," 1 No. 6 Bus. Entities 40, 47 (1999), 1999 WL 1419055, at *47 (criticizing courts for disallowing new tax elections, which has the effect of "sever[ing] the tax burden from the assets without the consent of the shareholders," and noting that this "abuses the economics of both the tax and the bankruptcy systems"); cf. In re Forman Enters., Inc., 281 B.R. 600, 609-610 (W.D. Penn. 2002) (S corporation shareholders not unjustly enriched by retaining tax refunds for themselves rather than turning them over to chapter 7 trustee for distribution to debtor's creditors).

Here, appellant did not attempt a statutory revocation of the S corporation election. Moreover, the record indicates that he was personally liable for V & M's debts. See Mourad, 121 T.C. at 6; Appendix at 336. To the extent that the proceeds from the sale of

the apartment complex were applied to the company's debts, therefore, appellant received benefit along with the tax burden.[3]

Accordingly, we conclude that V & M remained an S corporation following its entry into bankruptcy and that appellant properly was assessed pass-through tax liability on the asset sale.

B. Availability of the Low-income Housing Credit

Appellant argues that if he is to be assessed taxes on the income generated by the sale of the Mandela Apartments property, he is entitled to the low-income housing credit available for such projects under 26 U.S.C. § 42.[4]  Under the statute and its related regulations, see 26 C.F.R. § 1.42-1T, a detailed series of steps must be followed by a property owner seeking the credit, none of which appellant completed.  The trustee, however, did help to secure the credit on behalf of the new owners of the Mandela Apartments, and appellant argues that equity entitles him to utilize the credit to offset his tax liability.

---

[3] Appellant states in his brief that "[t]he proceeds from the disposition of the corporation's assets were paid directly to a creditor's trust rather than the corporation."

[4] Section 42 was added to the Internal Revenue Code in 1986 to stimulate the production of low-income rental housing.  See "Joint Committee on Taxation's General Explanation of the Tax Reform Act of 1986" (Blue Books), Title II, Section E(2) ("Congress believed a more efficient mechanism for encouraging the production of low-income rental housing could be provided through the low-income rental housing tax credit."); Oti Kaga, Inc. v. South Dakota Hous. Dev. Auth., 342 F.3d 871, 875 (8th Cir. 2003) (section 42's tax credit allocation program "encourages investment in low-income housing projects").

This argument is entirely lacking in foundation.  So far as the record on appeal shows, the tax credits granted to the project were obtained for 1998.  See Appendix at 169 ("Certificate of Binding Commitment" from the Massachusetts Department of Housing and Community Development for "$1,000,000 in 1998 Tax Credits for Mandela Homes," granted under the "Low-Income Housing Tax Credit Program as authorized by Section 42(h)(1)(c) of the Internal Revenue Code of 1986").  The tax liability at issue in this case is for 1997.  Appellant thus appears to be seeking to use a tax credit that does not exist.  The record does not permit the conclusion that, had the trustee sought to obtain a tax credit for 1997, it would have been granted.[5]  In these circumstances, we find no error in the district court's conclusion that appellant is responsible for the full income tax liability generated from the sale of Mandela Apartments.

Affirmed.

_____

[5] We note that appellant states in his brief that V & M qualified for the tax credit in 1994, two years before the trustee took over operation of the business.  It appears that no effort to secure the credit was made until the trustee did so in anticipation of the change of ownership that occurred in December 1997.

-10-