T.C. Memo. 2009-217

UNITED STATES TAX COURT

ALPHONSE MOURAD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18038-05L.                    Filed September 17, 2009.

Alphonse Mourad, pro se.

<u>Louise R. Forbes</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

GALE, <u>Judge</u>: Pursuant to section 6330(d)(1),[1] petitioner
seeks review of respondent's determination to proceed with a levy
to collect unpaid income tax with respect to petitioner's 1995

_____

[1]Unless otherwise noted, section references are to the
Internal Revenue Code of 1986, as amended, and Rule references
are to the Tax Court Rules of Practice and Procedure.

and 1999 taxable years.  Respondent concedes that petitioner is entitled to challenge the underlying tax liability for those years.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioner resided in Massachusetts when he filed the petition.

Petitioner was the sole shareholder of V&M Management, Inc. (V&M Management), an S corporation, from 1994 and at all relevant times thereafter.  V&M Management owned and operated a 275-unit apartment complex known as Mandela Apartments in Roxbury, Massachusetts.  On January 8, 1996, V&M Management filed a petition for reorganization pursuant to chapter 11 of the U.S. Bankruptcy Code in the U.S. Bankruptcy Court for the District of Massachusetts in Boston.  The bankruptcy court appointed an independent trustee (the bankruptcy trustee) to administer the reorganization.

On September 26, 1997, the bankruptcy court confirmed a plan of reorganization, the crux of which involved selling Mandela Apartments and its related property.  On December 18, 1997, the bankruptcy trustee sold Mandela Apartments and its related property by means of an installment sale.[2]  In 1997 the

---

[2]V&M Management's corporate income tax returns list the sale of Mandela Apartments and related property, such as appliances, on several different Forms 6252, Installment Sale Income.  For
(continued...)

bankruptcy trustee and a limited partnership were coapplicants on a low-income housing tax credit application seeking to secure low-income housing tax credits for Mandela Apartments in subsequent years.[3] The trustee intended to syndicate the tax credits to provide the funds to make payments to V&M Management's creditors.

The bankruptcy trustee prepared and filed Forms 1120S, U.S. Income Tax Return for an S Corporation, on behalf of V&M Management for taxable years 1997 through 1999. V&M Management's income tax returns for each of those years reported income from the installment sale. V&M Management did not claim any low-income housing tax credits on its income tax returns for any of the years 1997 through 1999.

Petitioner received an extension for filing his income tax return for his 1995 taxable year until October 15, 1996. Petitioner filed an income tax return for 1995 that respondent received on November 15, 1999. Petitioner reported a $5,613 income tax liability on his 1995 return but made no payment. On March 20, 2000, respondent assessed the reported $5,613 tax

---

[2](...continued)
convenience, we refer to the sale of Mandela Apartments and related property in the singular throughout this opinion.

[3]In connection with the redetermination of petitioner's 1997 Federal income tax liability, the Court of Appeals for the First Circuit found that the credits had been awarded to the Mandela Apartments' new owners in 1998. Mourad v. Commissioner, 387 F.3d 27, 31 (1st Cir. 2004), affg. 121 T.C. 1 (2003).

liability, as well as additions to tax under section 6651(a)(1) and (2) of $1,263 and $1,235, respectively, and $2,608 of interest.

Petitioner filed an income tax return for his 1999 taxable year that was received by respondent on December 14, 2004. Petitioner reported adjusted gross income of $310,692 and a tax liability of $536,931 on the return. Respondent adjusted petitioner's reported tax liability downward to $107,502 and on February 7, 2005, assessed that amount, as well as additions to tax under section 6651(a)(1) and (2) of $24,188 and $26,876, respectively, and interest of $45,898.

Respondent issued petitioner a notice of deficiency for his 1997 taxable year, and petitioner filed a Tax Court petition in response thereto. In 2003 this Court issued its Opinion in Mourad v. Commissioner, 121 T.C. 1 (2003). The Court in Mourad sustained respondent's deficiency determination for petitioner's 1997 taxable year. In doing so, the Court determined inter alia that petitioner was not entitled to claim low-income housing tax credits in 1997. The Court's decision was affirmed by the Court of Appeals for the First Circuit. Mourad v. Commissioner, 387 F.3d 27 (1st Cir. 2004).

On April 13, 2005, respondent sent petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for petitioner's 1995 and 1999 taxable years. Petitioner timely

requested a hearing, and a telephone conference was conducted on July 29, 2005.  The only issues petitioner raised during the hearing were challenges to the underlying tax liabilities.

Respondent issued petitioner a notice of determination sustaining the proposed levy on August 24, 2005, and petitioner timely filed a petition in response thereto.

OPINION

I.  Background

Section 6331(a) authorizes the Secretary to levy upon property and property rights of any person liable for taxes (taxpayer) who fails to pay those taxes after notice and demand for payment is made.  Section 6331(d) provides that the levy authorized by section 6331(a) may be made with respect to any unpaid tax only if the Secretary has given written notice to the taxpayer 30 days before levy.  Section 6330(a) further requires that the notice advise the taxpayer of the amount of the unpaid tax and of the taxpayer's right to a hearing.

If a hearing is requested, the hearing is to be conducted by an officer or employee of the Commissioner's Appeals Office with no prior involvement with respect to the unpaid tax at issue. Sec. 6330(b)(1), (3).  The Appeals officer shall at the hearing obtain verification that the requirements of any applicable law or administrative procedure have been met.  Sec. 6330(c)(1).  The taxpayer may raise at the hearing "any relevant issue relating to

the unpaid tax or the proposed levy". Sec. 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability at the hearing if the taxpayer did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B). Amounts reported as due on the taxpayer's original return may also be challenged. Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004).

At the conclusion of the hearing, the Appeals officer must determine whether and how to proceed with collection and shall take into account (1) the verification that the requirements of any applicable law or administrative procedure have been met; (2) the relevant issues raised by the taxpayer; (3) challenges to the underlying tax liability by the taxpayer, where permitted; and (4) whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that the collection action be no more intrusive than necessary. Sec. 6330(c)(3).

With respect to determinations made before October 17, 2006,[4] we have jurisdiction to review the Appeals Office's determination where we have jurisdiction over the type of tax

---

[4]Pursuant to the Pension Protection Act of 2006, Pub. L. 109-280, sec. 855, 120 Stat. 1019, this Court has exclusive jurisdiction to review determinations under sec. 6330, effective for determinations made after the date which is 60 days after the Aug. 17, 2006, date of enactment, or Oct. 16, 2006.

involved in the case.  Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  Generally, we consider only those issues that the taxpayer raised during the section 6330 hearing.  Giamelli v. Commissioner, 129 T.C. 107, 112-113 (2007); Magana v. Commissioner, 118 T.C. 488, 493 (2002).  However, the Appeals officer's mandated verification under section 6330(c)(1) that the requirements of any applicable law or administrative procedure have been met is subject to review without regard to a challenge by the taxpayer at the hearing.  Hoyle v. Commissioner, 131 T.C. ___ (2008).

Where it is properly at issue, we review the underlying tax liability de novo; the Appeals officer's determinations concerning collection matters are reviewed for abuse of discretion.  See, e.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

II.  Challenges to the Underlying Tax Liability

The parties agree that petitioner did not receive a notice of deficiency or otherwise have an opportunity to dispute his underlying tax liabilities for 1995 and 1999.  Therefore, the underlying tax liabilities for 1995 and 1999 are properly at issue, see Montgomery v. Commissioner, supra, and we review them de novo.[5]  Petitioner bears the burden of proving that the

---

[5]However, as discussed infra, petitioner is collaterally estopped from contesting certain issues affecting his underlying
(continued...)

underlying tax liabilities are incorrect.[6]  See Rule 142(a);
Welch v. Helvering, 290 U.S. 111, 115 (1933).

However, under section 7491(c) the Commissioner bears the
burden of production with respect to the additions to tax.  In
order to meet that burden, the Commissioner must offer sufficient
evidence to indicate that it is appropriate to impose the
relevant addition.  Higbee v. Commissioner, 116 T.C. 438, 446
(2001).  Once the Commissioner meets his burden of production,
the taxpayer bears the burden of proving error in the
determination, including evidence of reasonable cause or other
exculpatory factors.  Id. at 446-447.

A.  1995 Taxable Year

Petitioner reported a $5,613 income tax liability on his
1995 return but made no payments toward the liability.
Petitioner's only challenge to the 1995 liability is his claim
that he is entitled to an investment interest expense

---

[5](...continued)
tax liability for 1999.

[6]Petitioner failed to cooperate with respondent in preparing
this case for trial, including (by his own admission) spurning
respondent's counsel's requests for information and meetings
until the day before trial.  Consequently, petitioner is not
entitled to any shift in the burden of proof with respect to the
underlying tax liabilities.  See sec. 7491(a)(1) and (2)(B); see
also, e.g., Connors v. Commissioner, T.C. Memo. 2006-239, affd.
277 Fed. Appx. 122 (2d Cir. 2008); Krohn v. Commissioner, T.C.
Memo. 2005-145; Lopez v. Commissioner, T.C. Memo. 2003-142, affd.
on this issue without published opinion 116 Fed. Appx. 546 (5th
Cir. 2004).

carryforward from his 1994 taxable year to reduce the 1995 liability.

A noncorporate taxpayer may deduct investment interest for any taxable year only to the extent of any net investment income. Sec. 163(d)(1).  Any amount not allowed as a deduction because of section 163(d)(1) may be carried forward to succeeding taxable years.  Sec. 163(d)(2).

Petitioner reported no investment income on his 1995 return which could be offset by an investment interest expense carryforward, and petitioner has adduced no evidence in this proceeding that he had such investment income in 1995.[7]  In sum, petitioner has not shown that his underlying tax liability for 1995 as reported on his return should be adjusted to account for an investment interest expense carryforward.  Accordingly, the assessment of the amounts reported as due on the 1995 return was proper.

With respect to the 1995 addition to tax under section 6651(a)(1), that section provides for an addition to tax for a taxpayer's failure to file a required return on or before the due date of the return, including extensions, unless the failure to

---

[7]We note, however, that petitioner attached a Form 4952, Investment Interest Expense Deduction, to his 1995 return claiming an investment interest expense of $965,226, which he intended to carry forward to 1996.  Petitioner was allowed to carry forward and deduct a $965,226 investment interest expense in his 1997 taxable year.  See Mourad v. Commissioner, 121 T.C. at 3 n.6.

file is due to reasonable cause and not due to willful neglect.
Respondent introduced a Form 4340, Certificate of Assessments,
Payments, and Other Specified Matters, for petitioner's 1995
taxable year, which records that petitioner received an extension
until October 15, 1996, to file his 1995 return and that
petitioner actually filed his return on November 15, 1999.
Petitioner reported sufficient income on his 1995 return to
obligate him to file an income tax return for that year.  See
sec. 6012.  Accordingly, respondent has met his burden of
production under section 7491(c) with respect to the section
6651(a)(1) addition to tax.  Petitioner presented no evidence of
reasonable cause for his failure to timely file his 1995 return,
and we consequently conclude that the assessment of the section
6651(a)(1) addition to tax for 1995 was proper.

With respect to the 1995 addition to tax under section
6651(a)(2), that section provides for an addition to tax for a
taxpayer's failure to timely pay any amount shown as tax on an
income tax return, unless such failure is due to reasonable cause
and not due to willful neglect.  We have found no error in the
underlying tax liability for 1995, and the Form 4340 for 1995
records that petitioner failed to pay the tax reported on his
1995 return.  Accordingly, respondent has met his burden of
production with respect to the section 6651(a)(2) addition to
tax.  As petitioner has adduced no evidence indicating that his

failure to pay the tax was due to reasonable cause and not due to willful neglect, the assessment of the section 6651(a)(2) addition to tax was proper.[8]

B.   1999 Taxable Year

Petitioner filed his return for 1999 on December 14, 2004. Attached to the 1999 return was a Schedule K-1 (Form 1120S), Shareholder's Share of Income, Credits, Deductions, etc., from V&M Management.  The return reported adjusted gross income of $310,692 and a tax liability of $536,739 (the amount listed as a net section 1231 gain on the Schedule K-1 from V&M Management). Respondent reduced this liability to $107,502 pursuant to section 6213(b)(1).

Notwithstanding the position he took on the return, petitioner argues that he should not be taxed on passthrough income earned by his S corporation while it was in chapter 11 bankruptcy reorganization.  He contends that the bankruptcy trustee was the real owner of V&M Management when its assets were sold and that he was no longer the actual owner of V&M Management in 1999.  Petitioner further argues that the assets of V&M Management were sold in 1997 and he should therefore have no income from V&M Management in 1999.  Petitioner argues in the alternative that if he is liable for taxes in 1999 from the sale

---

[8]Petitioner has made no claim for abatement or otherwise disputed the interest assessed with respect to the 1995 tax liability.

of V&M Management's assets, then he should be entitled to offset the tax with low-income housing credits.

Petitioner has previously argued to this Court that V&M Management's bankruptcy filing caused him to cease to be obligated for V&M Management's tax liability. Petitioner's argument was considered and rejected by this Court and the Court of Appeals for the First Circuit. See Mourad v. Commissioner, 121 T.C. 1 (2003), affd. 387 F.3d 27 (1st Cir. 2004). In Mourad, we held that the filing of a bankruptcy petition for reorganization neither terminates an S corporation's tax status nor creates a separate taxable entity. Petitioner's argument that V&M Management's bankruptcy proceeding extinguished his obligation for V&M Management's taxes is therefore incorrect. Petitioner was the sole shareholder of V&M Management, an S corporation, when its assets were sold in 1997, and any installment sale income passed through to petitioner.[9] See sec. 1366.

V&M Management reported the sale of its assets on its corporate income tax returns for 1997, 1998, and 1999 as an installment sale, with installment sale income in each of those

_____

[9]As this Court observed in Mourad v. Commissioner, 121 T.C. at 6, there is no unfairness in taxing petitioner on his passthrough income from V&M Management while the corporation is in bankruptcy, given petitioner's receipt of prior tax benefits from V&M Management's S corporation status and the reduction of petitioner's taxable income from V&M Management's depreciation deductions.

years.  See generally sec. 453.  V&M Management's 1999 return reported the installment sale gain for that year as $536,931, all of which was listed on the Schedule K-1 issued to petitioner for that year.  Petitioner attached a copy of the Schedule K-1 to his 1999 return but reported the $536,931 of installment sale gain as his tax due for the year.  Respondent adjusted the reported liability downward pursuant to the "math error" procedures of section 6213(b)(1).  Petitioner's contention that he could not have had income from V&M Management in 1999 because the sale occurred in 1997 is contradicted by V&M Management's returns. Petitioner has demonstrated no error in V&M Management's reporting of its 1999 income or in respondent's adjustment of petitioner's 1999 tax liability.

Petitioner alternatively argues that he should be allowed to offset any tax for 1999 by means of low-income housing credits that the bankruptcy trustee secured for Mandela Apartments. Section 38 provides for a general business credit, which includes a low-income housing credit under section 42.  Section 39 provides rules under which an unused section 38 credit may be carried back or forward to other taxable years.  Under section 42, an owner of a qualified low-income building is allowed to claim a low-income housing credit for any year only if, and to the extent that, the owner receives a housing credit allocation from a State or local housing credit agency.  Sec. 42(h)(1)(A),

(7)(D).  The credit allocation is deemed made when part I of Form 8609, Low-Income Housing Credit Allocation Certification, is completed and signed by an authorized officer of the housing credit agency.  Sec. 1.42-1T(d)(8)(ii), (e)(1), Temporary Income Tax Regs., 52 Fed. Reg. 23437 (June 22, 1987).  Further, to be eligible for the credit, a taxpayer is required to file a completed Form 8609 and a Form 8586, Low-Income Housing Credit, with his return for each year the credit is claimed.  Sec. 1.42-1T(h)(2), Temporary Income Tax Regs., 52 Fed. Reg. 23439 (June 22, 1987).[10]

Petitioner has not demonstrated his entitlement to a low-income housing credit for 1999.  V&M Management sold Mandela Apartments on December 14, 1997, so V&M Management was not an owner of Mandela Apartments in 1999.  Thus, the only way petitioner could be entitled to offset his 1999 tax with a low-income housing credit attributable to the Mandela Apartments would be if he were entitled to carry forward a credit from 1997 or from an earlier year in which V&M Management owned Mandela Apartments.

In Mourad v. Commissioner, 121 T.C. 1 (2003), this Court considered petitioner's income tax liability for 1997, including

---

[10]As applicable for 1999, these requirements were contained in sec. 1.42-1T(h)(2), Temporary Income Tax Regs., 52 Fed. Reg. 23439 (June 22, 1987).  Effective Jan. 27, 2004, the temporary regulation was replaced with sec. 1.42-1(h), Income Tax Regs. T.D. 9112, 2004-1 C.B. 523.

his claim that he was entitled to a low-income housing credit for that year, and determined that he was not entitled to any such credit. The issue of petitioner's entitlement to a low-income housing credit for 1997 was fully litigated and resolved in that case, and petitioner is therefore precluded from relitigating it. "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive to a subsequent action between the parties, whether on the same or a different claim." 1 Restatement, Judgments 2d, sec. 27 (1982); see also Montana v. United States, 440 U.S. 147, 153-154 (1979). The Court's determination that petitioner was not entitled to the credit for 1997 was a necessary component of the Court's determination of petitioner's 1997 tax liability in Mourad, and this Court's decision in that case is a valid and final judgment, affirmed on this issue on appeal. Thus, collateral estoppel[11] bars petitioner from claiming that he was entitled to a low-income housing credit in 1997.[12]

_____

[11]Respondent has made no claim that sec. 6330(c)(4) limits the issues petitioner may raise, and we therefore do not consider the applicability of that section.

[12]Petitioner attached to his posttrial brief a Feb. 26, 1998, letter that petitioner apparently believes shows that low-income housing credits were awarded to Mandela Apartments in 1997 (notwithstanding the Court of Appeals finding that the credits were awarded in 1998. See supra note 3.). Material attached to posttrial briefs is not competent evidence. Rule 143(b); Evans

(continued...)

With respect to years before 1997, petitioner has neither claimed nor introduced any evidence showing that he was entitled to low-income housing credits for any pre-1997 year. This precludes any demonstration that petitioner was entitled to a carryforward of a low-income housing tax credit from an earlier year to 1999 under section 39.[13] We therefore conclude that petitioner is not entitled to offset his 1999 tax by means of a low-income housing credit. Accordingly, the assessment of the 1999 tax was proper.

With respect to the 1999 addition to tax under section 6651(a)(1), respondent introduced a Form 4340 for petitioner's 1999 taxable year, which recorded that petitioner filed his

---

[12](...continued)
v. Commissioner, 48 T.C. 704, 709 (1967), affd. per curiam 413 F.2d 1047 (9th Cir. 1969); Hoang v. Commissioner, T.C. Memo. 2006-47. The letter was not offered as evidence at trial and is hearsay. In any event, because the issue of petitioner's entitlement to low-income housing credits in 1997 was litigated in Mourad v. Commissioner, 121 T.C. 1 (2003), petitioner is collaterally estopped from further contesting the issue in this proceeding. The letter petitioner would have us consider was written before the decision in Mourad v. Commissioner, 387 F.3d 27 (1st Cir. 2004), and thus would not prevent the operation of collateral estoppel. See Lea, Inc. v. Commissioner, 69 T.C. 762, 769-770 (1978).

[13]In Mourad v. Commissioner, 121 T.C. at 3, this Court also found that V&M Management never claimed low-income housing tax credits for 1995 or 1996 and that petitioner did not file a return for 1996. Since petitioner makes no claim in this proceeding that he is entitled to low-income housing tax credit carryforwards from those years, we find it unnecessary to decide whether he is collaterally estopped from doing so.

return on December 14, 2004. The Form 4340 does not indicate that petitioner had been granted an extension to file his 1999 return. In the absence of any other evidence, we conclude the return was due on April 15, 2000. See sec. 6072(a). Petitioner's 1999 income was sufficient to obligate him to file an income tax return for that year. See sec. 6012. Accordingly, respondent has met his burden of production under section 7491(c) with respect to the section 6651(a)(1) addition to tax. Petitioner presented no evidence of reasonable cause for his failure to timely file his 1999 return, and we consequently conclude that respondent's assessment of the section 6651(a)(1) addition to tax was appropriate.

Petitioner's 1999 return showed $536,931 as the tax due. Respondent reduced that amount to $107,502 and computed an addition to tax under section 6651(a)(2) on the lesser amount. The Form 4340 for petitioner's 1999 tax year shows that he failed to pay any tax with respect to 1999. Accordingly, respondent has met his burden of production with respect to the section 6651(a)(2) addition to tax. As petitioner has adduced no evidence indicating that his failure to pay the tax was due to reasonable cause and not due to willful neglect, we conclude that

respondent's assessment of the section 6651(a)(2) addition to tax was appropriate.[14]

III. Other Requirements

Petitioner did not raise any issues at his hearing other than the underlying tax liabilities. The Appeals officer verified that the requirements of applicable law and administrative procedure had been met through the examination of computer records. He further took into account whether the proposed collection action balanced the need for the efficient collection of taxes with the legitimate concern of petitioner that the collection action be no more intrusive that necessary. See sec. 6330(c)(3). Petitioner has identified no specific infirmities in the foregoing not heretofore addressed which would suggest any abuse of discretion by the Appeals officer.

We therefore hold that respondent may proceed with the levy that is the subject of the notice of determination at issue.

To reflect the foregoing,

Decision will be entered

for respondent.

_____

[14]Petitioner has made no claim for abatement or otherwise disputed the interest assessed with respect to the 1999 tax liability.