T.C. Memo. 2017-43

UNITED STATES TAX COURT

MICHAEL HOWARD DALTON, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 11987-13L.                    Filed March 13, 2017.

Michael Howard Dalton, pro se.

<u>Jeremy D. Cameron</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  This case arises from a petition for review filed in
response to a Notice of Determination Concerning Collection Action(s) Under
Section 6320 and/or 6330 (notice of determination) in which respondent sustained
a notice of intent to levy with respect to petitioner's Federal income tax liabilities

[*2] for the 2006 and 2008 tax years.[1]  Petitioner is challenging respondent's

determination for the 2008 tax year only.  The issues for decision are:  (1) whether

petitioner had passthrough income of $451,531 from his 50% shareholder interest

in an S corporation; and (2) whether respondent abused his discretion in sustaining

the levy notice.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of

facts and the attached exhibits are incorporated by this reference.  Petitioner

resided in Florida when he timely filed his petition.

In 1994 petitioner and his brother, John E. Dalton, organized Resort

Builders, Inc. (Resort Builders), a construction company.  Petitioner and John

were each 50% shareholders of Resort Builders, which elected to be treated as an

S corporation for Federal tax purposes.  John served as Resort Builders' president,

and from 1994 to 2007, petitioner served as its vice president.

In 2007 petitioner told John that he wanted to resign from Resort Builders

and turn in his stock.  Consequently, relations between the brothers became

acrimonious.  John changed the locks to the corporation's offices and withheld

---

[1]  All section references are to the Internal Revenue Code in effect at all
relevant times, and all Rule references are to the Tax Court Rules of Practice and
Procedure.

**[*3]** Resort Builders' books and records from petitioner. In 2008 petitioner filed a lawsuit against John and Resort Builders in Florida State court seeking, among other relief, dissolution of the corporation and an accounting.

After participating in mediation, the brothers agreed to settle the lawsuit. In a written "Mediation Settlement Agreement" (mediation agreement), petitioner agreed to transfer his Resort Builders shares to John. The mediation agreement also provided that "[s]uch transfer shall be effective no earlier than January 1, 2008, and no later than July 24, 2008, as determined by Defendants [John and Katherine L. Dalton] in their sole discretion." In accordance with this agreement, petitioner transferred his shares to John.[2]

Resort Builders subsequently filed a final Form 1120S, U.S. Income Tax Return for an S Corporation, for its short taxable year beginning January 1, 2008, and ending July 24, 2008. Resort Builders reported $903,063 of ordinary income and indicated that it was using the completed contract method of accounting. Resort Builders issued a Schedule K-1, Shareholder's Share of Income,

---

[2] The administrative record contains an unsigned copy of the mediation agreement. At trial petitioner identified this document as the agreement he had reached with John. We credit petitioner's testimony and find that he transferred his Resort Builders stock to John pursuant to the terms of the mediation agreement.

**[*4]** Deductions, Credits, etc., to petitioner (Resort Builders K-1).[3]  The Resort Builders K-1 reported petitioner's share of ordinary business income as $451,531. The accounting firm of Carr, Riggs & Ingram, LLC (Carr, Riggs & Ingram), prepared the final corporate return and the Resort Builders K-1.

In October 2010 petitioner and his wife, Anna Dalton, filed a Form 1040, U.S. Individual Income Tax Return, for the 2008 tax year.  Petitioner and Mrs. Dalton's Form 1040, which was also prepared by Carr, Riggs & Ingram, included a Schedule E, Supplemental Income and Loss, reporting $451,531 of passthrough income from Resort Builders.  On line 17 of the Form 1040 petitioner reported Schedule E income of $323,777.[4]  Several lines below line 17, petitioner wrote: "(LINE 17 IS INCORRECT * * * WILL FILE AMENDED RETURN)". Nevertheless, petitioner and Mrs. Dalton signed page 2 of the Form 1040, thereby certifying:  "Under penalties of perjury, I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and

---

[3]  We infer from Resort Builders' short taxable year ending July 24, 2008, that pursuant to the mediation agreement, John determined the effective date of petitioner's stock transfer to be July 24, 2008.

[4]  This number reflects $451,531 of passthrough income from Resort Builders less $127,754 of carryover losses and losses from other business ventures.

[*5] belief, they are true, correct, and complete." Petitioner never filed an amended return.

On February 21, 2011, the Internal Revenue Service (IRS) assessed the tax shown on petitioner's Form 1040, along with section 6651(a)(1) and (2) additions to tax. On January 3, 2012, the IRS issued petitioner a Letter 1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing, for the 2006 and 2008 tax years. Petitioner timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing. On the Form 12153 petitioner wrote: "2008 TAX CALCULATED INCORRECTLY. ACCOUNTANT USED CREDIT LINE TRANSACTION AS INCOME". Petitioner did not check any of the boxes denoting a request for a collection alternative.

Petitioner's case was assigned to Settlement Officer (SO) Sean Franklin in the IRS Appeals Office (Appeals). After discussing the case with his manager, SO Franklin concluded that it would be better handled by an Appeals field office. Accordingly, petitioner's case was reassigned to SO Joe Breazeale.

On April 25, 2012, SO Breazeale issued a letter to petitioner and his authorized representative. In the letter SO Breazeale asked petitioner or his authorized representative to contact him and enumerated collection alternatives petitioner could request. On June 19, 2012, SO Breazeale conducted a telephone

[*6] hearing with petitioner. During the hearing petitioner stated that the income reported on the Resort Builders K-1 was incorrect. He did not request a collection alternative. After the hearing SO Breazeale consulted his supervisor about the correct way to address petitioner's underlying liability challenge. In a followup call, he instructed petitioner to file an offer-in-compromise on the basis of doubt as to liability (OIC-DATL).

Petitioner promptly sent SO Breazeale a completed Form 656-L, Offer in Compromise (Doubt as to Liability), in which he offered to pay $10,000 to settle his 2008 tax liability. Petitioner also submitted a cover letter, a copy of the State court complaint that he had filed against John and Resort Builders, bank statements for the period January 2007 through April 2008, a "check register" report for the period January through June 2008, and Resort Builders' income tax returns for 2006, 2007, and its short taxable year ending July 24, 2008. SO Breazeale subsequently transferred petitioner's OIC-DATL to Appeals Officer (AO) Joseph P. Taranto. After reviewing petitioner's submission and speaking with petitioner by phone, AO Taranto recommended rejecting the OIC-DATL. He returned the case to SO Breazeale.

On March 25, 2013, SO Breazeale called petitioner and, in a voice message, told petitioner that Appeals had rejected the OIC-DATL and reiterated his

**[*7]** willingness to consider other collection alternatives. On April 3, 2013, petitioner attempted to return the telephone call, but SO Breazeale was unavailable. Later that day SO Breazeale returned petitioner's phone call and left petitioner another voice message. Petitioner did not return SO Breazeale's telephone call. On April 23, 2013, Appeals issued a notice of determination sustaining the levy notice.

## OPINION

### I.    Jurisdiction and Standard of Review

Section 6331(a) authorizes the Secretary to levy upon property and property rights of a taxpayer liable for tax if the taxpayer fails to pay the tax within 10 days after notice and demand for payment is made. Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.

If a taxpayer requests a hearing in response to a levy notice pursuant to section 6330, a hearing shall be held before an impartial officer or employee of Appeals. Sec. 6330(b)(1), (3). At the hearing the taxpayer may raise any relevant issue, including appropriate spousal defenses, challenges to the appropriateness of the collection action, and collection alternatives. Sec. 6330(c)(2)(A). A taxpayer

**[\*8]** is precluded from contesting the existence or amount of the underlying tax liability unless the taxpayer did not receive a notice of deficiency for the liability in question or did not otherwise have an earlier opportunity to dispute the liability. Sec. 6330(c)(2)(B); see also Sego v. Commissioner, 114 T.C. 604, 609 (2000).

Following a hearing Appeals must determine whether proceeding with the proposed levy action is appropriate.  In making that determination Appeals is required to take into consideration:  (1) verification presented by the Secretary during the hearing process that the requirements of applicable law and administrative procedure have been met, (2) relevant issues raised by the taxpayer, and (3) whether the proposed levy action appropriately balances the need for efficient collection of taxes with the taxpayer's concerns regarding the intrusiveness of the proposed collection action.  Sec. 6330(c)(3).

Section 6330(d)(1) grants this Court jurisdiction to review the determination made by Appeals in connection with the section 6330 hearing.  Where the validity of the underlying tax liability is properly at issue, we review the taxpayer's liability de novo.  See Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. 176, 182 (2000).  We review all other determinations for abuse of discretion.  Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 182.

**[\*9]**   The parties agree that petitioner did not receive a notice of deficiency or otherwise have an opportunity to dispute his underlying tax liability for 2008. Therefore the underlying tax liability for 2008 is properly at issue, see Montgomery v. Commissioner, 122 T.C. 1, 9-10 (2004), and we review it de novo. Petitioner bears the burden of proving that the underlying tax liability is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

II.     Underlying Liability

Petitioner argues that he should not have to report the income shown on the final corporate return and the Resort Builders K-1 because he did not receive a distribution and was not otherwise enriched by Resort Builders in 2008. Respondent counters that petitioner failed to establish that the final corporate return and the Resort Builders K-1 were inaccurate.  For the reasons stated below, we agree with respondent.

An S corporation is not subject to Federal income tax at the entity level. Sec. 1363(a); see also Taproot Admin. Servs., Inc. v. Commissioner, 133 T.C. 202, 204 (2009), aff'd, 679 F.3d 1109 (9th Cir. 2012).  Instead, an S corporation's items of income, gain, loss, deduction, and credit--whether or not distributed--flow through to the shareholders, who must report their pro rata shares of such items on their individual income tax returns for the shareholder taxable year within which

[*10] the S corporation's taxable year ends. Sec. 1366(a); Mourad v. Commissioner, 121 T.C. 1, 3 (2003), aff'd, 387 F.3d 27 (1st Cir. 2004); see, e.g., Dunne v. Commissioner, T.C. Memo. 2008-63; sec. 1.1366-1(a), Income Tax Regs.

Petitioner was a 50% shareholder of Resort Builders until July 24, 2008, the last day of Resort Builders' short taxable year. Accordingly, 50% of Resort Builders' income for its short taxable year ending July 24, 2008, flowed through to petitioner. Petitioner was required to report this income on his 2008 Form 1040 even if he did not receive a distribution that year. See sec. 1.1366-1(a), Income Tax Regs.

While petitioner contends that Resort Builders earned less income than it reported on its final corporate return, the record does not support this factual position. At trial petitioner could not explain why the final corporate return and the Resort Builders K-1 were incorrect without resorting to speculation, and he did not call any witnesses. While petitioner submitted a "check register" report and statements for a BankTrust account owned by Resort Builders for the period January 2007 through December 2008, the deposits shown therein do not necessarily reflect Resort Builders' income for the short taxable year ending July 24, 2008. For example, petitioner failed to establish that the BankTrust account

[*11] was Resort Builders' only bank account. Furthermore, Resort Builders used the completed contract method of accounting, under which taxpayers report as income the gross contract price, less all allocable contract costs, for the taxable year in which a contract is completed. See sec. 1.460-4(d), Income Tax Regs. For contracts completed in 2008, Resort Builders could have received a payment in a prior year that was reportable as income for 2008. We therefore sustain respondent's determination with respect to petitioner's underlying tax liability.

III.    Abuse of Discretion

We now turn to respondent's determination to proceed with collection, which we review under an abuse of discretion standard. Appeals abuses its discretion if it acts "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

Petitioner has not advanced any argument that SO Breazeale's actions were an abuse of discretion. Additionally, petitioner did not offer any collection alternative during the course of the hearing. Furthermore, SO Breazeale determined that the requirements of applicable law and administrative procedure were met and concluded that sustaining the levy notice appropriately balanced the need for efficient collection of taxes with petitioner's concerns regarding the

**[\*12]** intrusiveness of the levy action.  Accordingly, we hold that respondent did not abuse his discretion in sustaining the levy notice.

In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered for</u>

<u>respondent</u>.