T.C. Memo. 2003-79


UNITED STATES TAX COURT


JHK ENTERPRISES, INC., A CALIFORNIA CORPORATION, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8511-00.                  Filed March 18, 2003.


        <u>Held</u>:  R's determination that P is not entitled to
a deduction for an abandonment loss in tax year ended
1995 is sustained.

        <u>Held</u>, <u>further</u>, R's determination that P is liable
for an addition to tax under sec. 6651(a)(1), I.R.C.,
for tax year ended 1995 is sustained.


<u>Jack H. Kaufman</u>, for petitioner.

<u>Christine V. Olsen</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

NIMS, Judge:  Respondent determined a Federal income tax deficiency for petitioner's tax year ended December 31, 1995, in the amount of $37,537.  Respondent also determined an addition to tax for said year of $5,631, pursuant to section 6651(a)(1).

The issues for decision are:

(1) Whether petitioner sustained an abandonment loss during tax year ended 1995 that qualifies as a deductible loss pursuant to section 165; and

(2) whether petitioner is liable for the section 6651(a)(1) addition to tax for failure timely to file an income tax return for tax year ended 1995.

Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect for the year at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## FINDINGS OF FACT

### General Background

Some of the facts have been stipulated and are so found. The stipulations of the parties, with accompanying exhibits, are incorporated herein by this reference.  At the time the petition was filed in this case, petitioner's principal place of business was San Diego, California.

Jack H. Kaufman, Jr.

Jack H. Kaufman, Jr. (Kaufman) is petitioner's president. Kaufman is an attorney who was admitted to practice in California in 1973. Kaufman received his undergraduate degree from the University of San Diego and his law degree from the University of California, Berkeley School of Law, Boalt Hall.

Kaufman was previously a partner in a partnership known as Kaufman, Lorber, Grady, and Farley (the partnership). During 1986, Kaufman received certain assets and assumed certain liabilities in a liquidating distribution of the partnership. Among the assets received by Kaufman in the liquidating distribution were client files, a client list, going concern value (goodwill), and equipment.

Kaufman is a sole practitioner and operates his own law firm, Jack H. Kaufman, A Professional Corporation (Jack H. Kaufman, APC). At the time of trial, Kaufman was the sole shareholder of Jack H. Kaufman, APC.

Between December 1993 and April 1994, Kaufman wrote 43 checks on his business account which were dishonored due to insufficient funds. One of the dishonored checks was in the amount of $1,689 and was for payment of a hotel bill in Yosemite National Park. The dishonored check for payment of a hotel bill in Yosemite National Park led to Kaufman's prosecution by the U.S. Attorney. On December 14, 1994, Kaufman was convicted in

the United States Federal District Court Eastern District of California.  As a result of this conviction, the State Bar placed Kaufman on "interim" suspension from August 15 to November 15, 1995, while it conducted its own investigation.  Thereafter, the State Bar determined that Kaufman's criminal conviction warranted an 18-month suspension, which was stayed, and placed him on probation for 18 months, including 90 days' actual suspension from August 15 through November 15, 1995 (hereinafter sometimes referred to as Kaufman's suspension).

Petitioner

Kaufman formed petitioner in 1987.  During 1995, petitioner was engaged in the business of leasing real estate and equipment, and leased office space and equipment to Jack H. Kaufman, APC.

Petitioner filed Forms 1120, U.S. Corporation Income Tax Returns, for tax years 1991, 1992, 1993, 1994, and 1995.

Petitioner's return for tax year 1995 was received by respondent on December 2, 1996.  On the return, petitioner claimed a deduction for a loss of $196,923 for "Abandonment of Equipment".

Jack H. Kaufman, APC

Jack H. Kaufman, APC was owned and operated by Kaufman at the beginning of 1995.  On August 14, 1995, Kaufman sold all of the shares in Jack H. Kaufman, APC to attorney Susan G. Carter (Carter).  On and after August 14, 1995, the firm's name remained

Jack H. Kaufman, APC.  In a letter dated August 30, 1995, regarding "COUNSEL OF RECORD STATUS/VARIOUS LITIGATION MATTERS", Kaufman wrote to Carter that "you are going to handle all legal matters on pending cases" and "since you are the owner of JACK H. KAUFMAN, A.P.C., you have control of all necessary files pertaining to these and all other client matters."  In a letter dated August 30, 1995, regarding "COURT DATES AND OTHER COVERAGE MATTERS/JACK H. KAUFMAN, A.P.C.", Kaufman listed specific cases that Carter needed to cover in her "capacity as an employee and the only attorney for JACK H. KAUFMAN, A.P.C."  Jack H. Kaufman, APC remained in business throughout 1995.

On its 1995 Form 1120, Jack H. Kaufman, APC claimed a deduction in the amount of $58,941 for "equipment retired".  The deduction claimed for "equipment retired" related to client files and goodwill purportedly owned by Jack H. Kaufman, APC.

Jack H. Kaufman, APC's corporate income tax return for 1995 was examined by respondent.  Respondent initially challenged, and respondent's Appeals Office eventually consented to, the claimed deduction for "equipment retired" by Jack H. Kaufman, APC in 1995.

Notice of Deficiency

On May 8, 2000, respondent issued a notice of deficiency to petitioner.  In the notice of deficiency, respondent determined a Federal income tax deficiency for petitioner's tax year ended

1995 in the amount of $37,537 and determined an addition to tax of $5,631 pursuant to section 6651(a)(1) for failure timely to file an income tax return for 1995. The primary issue in the notice of deficiency is whether petitioner is entitled to an abandonment loss deduction in the amount of $196,923 for 1995.

OPINION

I. Abandonment Loss

A. General Rules

Section 165(a) allows "as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." A deductible loss may arise from the permanent withdrawal of property used in a trade or business. Secs. 1.165-2(a), (c), 1.167(a)-8, Income Tax Regs. The basis for determining the amount of the deduction is the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property. Sec. 165(b).

In general, a deductible loss is sustained "during the taxable year in which the loss occurs as evidenced by closed and completed transactions and as fixed by identifiable events occurring in such taxable year." Sec. 1.165-1(d)(1), Income Tax Regs. The "identifiable event" must constitute "some step that irrevocably cuts ties to the asset" and must be observable by outsiders. Corra Res., Ltd. v. Commissioner, 945 F.2d 224, 226 (7th Cir. 1991), affg. T.C. Memo. 1990-133. Losses deductible

pursuant to section 165(a) are sometimes referred to as
"abandonment losses to reflect that some act is required which
evidences an intent to discard or discontinue use permanently."
Gulf Oil Corp. v. Commissioner, 914 F.2d 396, 402 (3d Cir. 1990)
(citing A.J. Indus., Inc. v. United States, 503 F.2d 660 (9th
Cir. 1974)), affg. on this issue, revg., and remanding 87 T.C.
135 (1986).

In order for the loss of an intangible asset to be
deductible, there must be "'(1) an intention on the part of the
owner to abandon the asset, and (2) an affirmative act of
abandonment.'"  Id. (quoting A.J. Indus., Inc. v. United States,
supra at 670).

Losses claimed with respect to nondepreciable property must
also meet the requirements of section 1.165-2(a), Income Tax
Regs., which provides in part:

> A loss incurred in a business or in a transaction
> entered into for profit and arising from the sudden
> termination of the usefulness in such business or
> transaction of any nondepreciable property, in a case
> where such business or transaction is discontinued or
> where such property is permanently discarded from use
> therein, shall be allowed as a deduction under section
> 165(a) for the taxable year in which the loss is
> actually sustained.  * * *

B.  Burden of Proof

In general, the Commissioner's determinations are presumed
correct, and the taxpayer bears the burden of proving otherwise.
Rule 142(a).  Although section 7491 may operate in specified

circumstances to place the burden on the Commissioner, the statute is effective only for court proceedings that arise in connection with examinations commencing after July 22, 1998. Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727. Since the record here is devoid of evidence showing that the underlying examination began after the relevant date, and since petitioner has at no time contended that the provisions of section 7491 are applicable, we conclude that the traditional burden remains upon petitioner.

C. Analysis Regarding Intangible Assets

In order to qualify for a deduction pursuant to section 165(a) based on the abandonment of property, a taxpayer must have owned the property it claims to have abandoned. Respondent contends that petitioner has failed to establish that it owned any intangible asset in 1995. Petitioner claims to have acquired ownership of intangible assets that were acquired by Kaufman, who acquired client files, a client list, and associated goodwill in connection with the dissolution of the partnership. Petitioner claims that Kaufman assumed 28 percent of $544,880 of partnership liabilities in connection with the dissolution of the partnership. Petitioner claims to have sufficient basis for the claimed abandonment loss deduction because Kaufman transferred to

petitioner all of the liabilities he had assumed in connection with the dissolution of the partnership, and, before 1995, petitioner paid the transferred liabilities.

Petitioner's claims with respect to ownership of intangible assets are inconsistent and dubious. Petitioner's conflicting statements leave unclear which entity owned the client files, client list, and associated goodwill.

Kaufman, testifying in his capacity as petitioner's president, stated:

> among the assets received out of the partnership were client files, a client list, and a going concern value [goodwill] associated with them, as well as tangible equipment and other assets that were received out from that partnership at that time.
>
> Subsequently, I transferred individually the client files to the * * * law corporation, Jack H. Kaufman, A Professional Corporation * * *
>
> I also individually kept all other assets associated with the partnership distribution individually for about a year, and then I formed JHK Enterprises * * *
>
> In connection with the formation of that entity, I transferred all the assets, as well as all the liabilities, that had been received in connection with that liquidating distribution to that entity. * * * between 1987 and '95, those assets were leased to the law corporation pursuant to written leases, which are part of the stipulated record and exhibits * * *

According to this testimony, Kaufman transferred client files he acquired in connection with the dissolution of the partnership to Jack H. Kaufman, APC, not to petitioner. The written leases, which Kaufman stated are part of the stipulated record and

exhibits, are actually not present in the record. Rather, several documents purporting to be amendments to leases are included in the record as stipulated exhibits. None of these documents makes reference to any intangible asset. For example, an "AMENDMENT OF LEASE", dated November 1, 1987, purports to amend both an equipment lease and a real property lease, but makes no mention of any intangible asset or intangible asset lease.

In a letter dated December 16, 1999, to respondent's Appeals Officer, Fred W. McMullen, (the December 16, 1999, letter) Kaufman attempted to justify a deduction of $58,941 taken by Jack H. Kaufman, APC. The justification for the deduction was that "27.625% of $544,880 in debt was assumed in return for receiving primarily client files and goodwill from the prior law firm * * * Thus, the writeoff is supported by an allocation of the debt assumption cost basis and the factual justification of obsolescence in the year in question." This justification indicates that Kaufman transferred to Jack H. Kaufman, APC all of the liabilities he had assumed in connection with the dissolution of the partnership, and that Jack H. Kaufman, APC became the owner of client files and associated goodwill that Kaufman had acquired in connection with the dissolution of the partnership.

In the December 16, 1999, letter, Kaufman also attempted to justify the $196,923 deduction at issue in this case. In that letter, he stated:

> The only adjustment amount is that the cost basis of the deduction should be reduced to the following mathematical total:
>
> A. 27.625% of $544880 or the sum of approximately $150,000
>
> B less $58,941 taken in item 2 above [the deduction claimed by Jack H. Kaufman, APC for abandonment of client files and goodwill]
>
> C result is approximately $92,000 rather than 196,923
>
> It is taxpayer's position that the debt assumption was substantially attributable to intangible property rights, i.e., goodwill and client list/files

These statements indicate that Jack H. Kaufman, APC and petitioner each received a portion of the debt assumed by Kaufman in connection with the dissolution of the partnership, and each owned some of the intangible assets received by Kaufman in connection with the dissolution of the partnership. The proposed adjustment reflects that the deduction claimed by petitioner is a partial duplication of that claimed by Jack H. Kaufman, APC. On brief, however, petitioner states:

> No duplicate deduction was taken since the abandonment losses taken on other entity returns at or about the same time were for abandonment of other assets than goodwill acquired by Petitioner from the law partnership distribution in 1986 though [sic] predecessors in interest.

Petitioner offers no explanation for this inconsistency.

Given petitioner's inconsistent statements regarding ownership and abandonment of client files, a client list, and associated goodwill, we conclude that petitioner has not established its ownership or abandonment of any intangible asset.

D.  Analysis Regarding Tangible Assets

Petitioner claims to have abandoned tangible assets in 1995. Respondent contends that petitioner has not established abandonment of any tangible asset and, alternatively, that petitioner has not established that any purportedly abandoned asset had an adjusted basis other than zero.

Petitioner claims that Kaufman's suspension had "devastating adverse impacts" on petitioner by adversely affecting its ability to lease office space and equipment to Jack H. Kaufman, APC. Petitioner claims to have abandoned equipment and other assets because they could no longer be used by Jack H. Kaufman, APC. Petitioner claims that equipment and other assets of no further practical use were "either destroyed, thrown out, or not used anymore."

Contrary to petitioner's claims, there is no credible evidence that Kaufman's suspension had devastating adverse impacts on petitioner.  The entity to which petitioner leased office space and equipment, Jack H. Kaufman, APC, continued to operate throughout 1995, including the period of Kaufman's suspension.  Throughout 1995, Jack H. Kaufman, APC continued to

lease office space and equipment from petitioner. Petitioner reported gross receipts in the amount of $266,072 for 1995. This is an increase from petitioner's reported gross receipts in the amount of $94,000 for 1994. Petitioner failed to reconcile its increase in gross receipts with its claim to have suffered devastating adverse impacts from Kaufman's suspension.

As evidence of petitioner's abandonment of tangible assets, petitioner provided a document entitled "JHK Enterprises Equipment Schedule as of 12/1/96" (the equipment schedule). The equipment schedule is a list of tangible assets. Some of the assets are listed as "In Service", others as "Abandoned", and still others as "1/2 Abandoned 1/2 In Service". The equipment schedule does not list a date of abandonment or a method of abandonment for any asset. The equipment schedule does not reflect that petitioner abandoned any tangible asset during 1995. At most, it reflects that petitioner abandoned some tangible assets before December 1, 1996.

Petitioner has not established that it abandoned any tangible asset in 1995. Aside from self-serving testimony of petitioner's president, petitioner has not provided any evidence that it abandoned tangible assets during 1995.

Assuming, for the sake of argument, that petitioner abandoned tangible assets during 1995, petitioner's loss deduction would be limited to its adjusted basis in the abandoned

assets.  Sec. 165(b).  Respondent contends that petitioner has failed to establish an adjusted basis other than zero for any of the purportedly abandoned assets.  The only documentary evidence petitioner provided to establish the amount of the claimed loss deduction for abandonment of tangible assets is the equipment schedule.  The equipment schedule lists the cost, but not the adjusted basis, of each asset.

Respondent argues that several of the assets listed as abandoned on the equipment schedule were fully depreciated prior to 1995, and, therefore, had an adjusted basis of zero in 1995. For example, the equipment schedule lists as abandoned a televideo system with a cost in the amount of $25,700.  A depreciation schedule attached to petitioner's 1994 Federal corporation income tax return indicates that a televideo system with a cost of $25,700 was fully depreciated before 1994. Consequently, in 1995, this asset had an adjusted basis of zero. Petitioner offered no explanation for why it should be allowed to deduct the stated cost, rather than the adjusted basis, of any purportedly abandoned asset.  We agree with respondent that petitioner has failed to establish an adjusted basis other than zero for any of the purportedly abandoned assets.

Petitioner has not demonstrated that it sustained a deductible loss pursuant to section 165(a) for the abandonment of any tangible asset.

II.  Section 6651(a)(1) Addition to Tax

    A.  General Rules

    Respondent determined that petitioner is liable for an addition to tax under section 6651(a)(1) for failure timely to file its 1995 Federal corporation income tax return.  Section 6651(a)(1) provides for an addition to tax of 5 percent of the tax required to be shown on the return for each month or fraction thereof for which there is a failure to file, the aggregate not to exceed 25 percent.  In order to avoid the imposition of the addition to tax, the taxpayer bears the burden of proving that the failure did not result from willful neglect and that the failure was due to reasonable cause.  Sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985).

    B.  Burden of Production and Burden of Proof

    Section 7491(c) provides:  "Notwithstanding any other provision of this title, the Secretary shall have the burden of production in any court proceeding with respect to the liability of any individual for any penalty, addition to tax, or additional amount imposed by this title."  The burden of production imposed by section 7491(c) is to produce evidence regarding the appropriateness of applying a particular addition to tax or penalty on the taxpayer.  Higbee v. Commissioner, 116 T.C. 438, 446 (2001).  Once the Commissioner meets his burden of

production, the taxpayer must produce evidence sufficient to persuade the Court that the Commissioner's determination is incorrect.  Id. at 447.

Section 7491 is effective only for court proceedings that arise in connection with examinations commencing after July 22, 1998.  Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.  The record here is devoid of evidence showing that the underlying examination began after the relevant date.  Respondent assumes that petitioner bears the burden of proof, and petitioner does not address this issue.  As previously stated, we have concluded that section 7491(c) does not apply in this case.  But whether or not section 7491(c) applies, respondent has produced sufficient evidence to satisfy the burden of production with respect to the appropriateness of applying the addition to tax.

C.  Analysis

Respondent claims that petitioner's 1995 return was received by respondent's Fresno Service Center on December 2, 1996.  Respondent argues that petitioner has not produced any evidence that the return was timely filed or that petitioner exercised ordinary care and prudence in filing the return.  Petitioner argues that its 1995 return reflects a signature date of October 15, 1996 and was "filed in a timely manner by depositing in U.S. Mail."  Petitioner also asserts that it filed an appropriate

extension.  Petitioner claims that the stamp, which indicates the date that respondent received petitioner's return, is illegible and not reliable.  Petitioner claims that, if the Court upholds the imposition of the addition to tax, a rate of 10 percent is appropriate.

Contrary to petitioner's claim, the received date stamped on petitioner's 1995 return is legible and indicates that respondent received petitioner's 1995 return on December 2, 1996.  There is nothing in the record that supports petitioner's claim that the received date is not reliable.

The notice of deficiency states that petitioner's return was due on September 15, 1996.  The record does not contain an application for extension of time to file petitioner's 1995 return.  In the absence of such application or other evidence of the due date of petitioner's 1995 return, we accept the due date of September 15, 1996, listed in the notice of deficiency.

The notice of deficiency lists a rate of 15 percent for the addition to tax.  A rate of 15 percent is appropriate for a taxpayer who filed a return 3 months late.  Sec. 6651(a)(1). Since we conclude that petitioner's 1995 return was due on September 15, 1996, and was actually filed on December 2, 1996, the appropriate rate for the addition to tax is that associated

with a 3-month filing delay.  We therefore hold that petitioner is liable for the section 6651(a)(1) addition to tax for 1995, as determined by respondent.

To reflect the foregoing,

Decision will be entered
for respondent.