T.C. Memo. 2009-246

UNITED STATES TAX COURT

JEFFREY C. AND RENEE M. MILTON, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 15875-08.                    Filed October 28, 2009.

<u>Robert J. Gumser</u>, for petitioners.

<u>Heather K. McCluskey</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

KROUPA, <u>Judge</u>:  Respondent determined an $86,767 deficiency
in petitioners' Federal income tax for 2005 and a $17,353

accuracy-related penalty under section 6662(a).[1]  After

concessions,[2] we are asked to decide whether petitioners

underreported their distributive share from Renee Milton, Inc.

(RMI), an S corporation, for 2005.  Respondent disallowed RMI's

claimed deduction for an abandoned partnership interest.  We hold

that RMI was not entitled to a deduction and therefore

petitioners underreported their income.  We further find that the

accuracy-related penalty applies.

                         FINDINGS OF FACT

     Some of the facts have been stipulated and are so found.

The stipulation of facts and the accompanying exhibits are

incorporated by this reference.  Petitioners resided in San

Diego, California, at the time they filed the petition.

RMI

     Renee M. Milton (petitioner) was the president and sole

shareholder of RMI, a real estate business, during 2005.

Petitioner, a real estate professional, entered into real estate

purchasing and selling agreements for RMI's clients.

---

[1]All section references are to the Internal Revenue Code in
effect for the year at issue, and all Rule references are to the
Tax Court Rules of Practice and Procedure, unless otherwise
indicated.

[2]Petitioner conceded Renee Milton, Inc. had $4,488.50 of
unreported gross receipts or sales and it is not entitled to a
deduction for outside services of $100,000.  Respondent conceded
that petitioners are entitled to $40,152 of other deductions.

KM Welding Transaction

Petitioner's handyman approached her in 2004 about a business opportunity involving his son, Donald Purscelley (Mr. Purscelley), who worked as a welder for Kearney Mesa Welding (KM Welding). Salvatore Peluso, the owner of KM Welding, was considering retirement, and Mr. Purscelley expressed an interest in purchasing the business. Mr. Purscelley lacked any funds to purchase KM Welding on his own, so his father asked petitioner if she would be interested in participating in Mr. Purscelley's purchase of the business. Petitioner was interested but only to obtain the right of first refusal to purchase the leased property on which KM Welding operated its business.

Mr. Purscelley and his father negotiated the price for KM Welding with Mr. Peluso, and the deal was consummated with a handshake. Petitioner was aware that neither Mr. Purscelley nor his father would be able to contribute money towards the purchase price. Petitioner gave Mr. Purscelley's father a check payable to Mr. Peluso for $90,000 and instructed the father to purchase KM Welding. She used money she had earned from RMI that she had in her savings account.

Petitioner's purchase check, dated February 17, 2004, is the only document memorializing the transaction. The only documentation of the transaction petitioner received was a KM Welding sticker for her car. Petitioner "knew that * * * [the

Purscelleys] would let * * * [her] have * * * [the] first right to buy [the] land" so she did not need any documentation. Petitioner's name, however, was not on the lease for the property, nor was petitioner's "right" ever put in writing.

Operation of KM Welding

Petitioner discussed forming a business entity with Mr. Purscelley and his father to purchase KM Welding. Ownership of the business was to be divided into thirds among petitioner, Mr. Purscelley, and his father. Mr. Purscelley initially created an LLC, but he dissolved it in 2005 because of administrative difficulties. Mr. Purscelley operated KM Welding as a sole proprietorship during 2005.

Mr. Purscelley made no distributions in 2004 or 2005, nor did he believe he was obligated to share the profits with petitioner or his father. Furthermore, petitioner expected to receive only the lease and, potentially, some of the profits once the business was sold.

RMI's Purported Abandonment of its Partnership Interest

Petitioner became concerned in 2005 that KM Welding was not completing projects or paying its bills. She was worried that her involvement with KM Welding would ruin her reputation and potentially affect the financial health of RMI. Neither petitioner nor RMI was obligated to pay anything additional to KM

Welding or its creditors.  In fact, KM Welding is still operating at the same location today as in 2005.

Mr. Purscelley was unresponsive when petitioner questioned him about her ownership interest in KM Welding and requested Schedules K-1.  Petitioner's CPA advised her at that time that it would be better to abandon the KM Welding partnership interest rather than to continue risking her reputation and her business, RMI.  Petitioner did not inform her purported partners, however, that she was abandoning her interest in KM Welding.  Petitioner also did not give public notice that she was no longer associated with KM Welding.

RMI claimed a $100,000 abandonment loss on its Form 1120S, U.S. Income Tax Return for an S Corporation, that passed through to petitioner as the sole shareholder in 2005.[3]  The loss was identified as an abandonment of a partnership interest.  RMI's balance sheet for 2005, however, does not list a partnership interest as of the beginning of the year for RMI.

Respondent issued a deficiency notice to petitioners disallowing the abandonment loss and adjusting petitioner's distributive share from RMI accordingly.  Petitioners timely filed a petition.

---

[3]Petitioners concede in their brief that the amount claimed should have been $90,000 rather than $100,000.

OPINION

We are asked to decide whether petitioners underreported the distributive share from RMI because RMI was not entitled to deduct an abandonment loss. Respondent argues that petitioner did not establish that an abandonment occurred entitling RMI to a deduction. Respondent also argues that the accuracy-related penalty should be imposed.

I. Abandonment Loss Deduction

We begin with the general rules for deducting abandonment losses. A taxpayer is entitled to deduct uncompensated losses during a given tax year. Sec. 165(a). Deductions are a matter of legislative grace, however, and the taxpayer must show that he or she is entitled to any deduction claimed.[4] Rule 142(a); Deputy v. du Pont, 308 U.S. 488, 493 (1940). This includes the burden of substantiation. Hradesky v. Commissioner, 65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). The Court need not accept the taxpayer's self-serving testimony when the taxpayer fails to present corroborative evidence. Beam v. Commissioner, T.C. Memo. 1990-304 (citing Tokarski v.

---

[4]Sec. 7491(a) shifts the burden of proof to the Commissioner in certain circumstances provided the taxpayer complies with substantiation requirements, maintains all required records, and cooperates with the Commissioner's reasonable requests. Petitioners did not seek to shift the burden. In addition, petitioners have failed to substantiate the abandonment loss deduction and maintain the required records, and therefore we decline to shift the burden. See sec. 7491(a)(2)(A) and (B).

Commissioner, 87 T.C. 74, 77 (1986)), affd. without published opinion 956 F.2d 1166 (9th Cir. 1992).

A taxpayer must prove he or she owned the property abandoned to claim an abandonment loss deduction. JHK Enters., Inc. v. Commissioner, T.C. Memo. 2003-79. Petitioner has not proven that RMI owned the partnership interest it purported to abandon in 2005. There is no evidence that the conversations among petitioner, Mr. Purscelley, and his father resulted in RMI's owning a partnership interest in KM Welding. Petitioner has not provided an asset purchase agreement or any other document to substantiate the transaction. Petitioner even failed to substantiate that the funds were RMI's rather than hers individually. Moreover, the purported partnership interest in KM Welding was not listed as an asset on RMI's beginning-of-the-year balance sheet for 2005. We find that RMI did not own a partnership interest in KM Welding in 2005.

In addition, the taxpayer must also establish to claim an abandonment loss that he or she (1) intended to abandon the property and (2) took affirmative action to abandon the property. Citron v. Commissioner, 97 T.C. 200, 208-209 (1991). The intent to abandon and the affirmative action are to be ascertained from the facts and circumstances surrounding the abandonment. United Cal. Bank v. Commissioner, 41 T.C. 437 (1964), affd. per curiam 340 F.2d 320 (9th Cir. 1965). An abandonment occurs where the

taxpayer has relinquished the asset as well as any future claims to the asset. Tsakopoulos v. Commissioner, T.C. Memo. 2002-8, affd. without published opinion 63 Fed. Appx. 400 (9th Cir. 2003). Some express manifestation of abandonment is required when the asset is an intangible property interest, such as a partnership interest. Citron v. Commissioner, supra at 209-210.

Petitioner testified that she intended to abandon her purported partnership interest in KM Welding to avoid damage to her reputation and to her business, RMI. The record does not contain any independent evidence, however, to support her alleged intent. There is no evidence, other than petitioner's self-serving testimony, that petitioner would be held liable for any debts of KM Welding. Moreover, petitioner did not provide any independent evidence of the financial health of KM Welding in 2005, the year RMI "abandoned" the partnership interest. Petitioner also did not provide evidence that KM Welding was not completing projects or timely paying its bills. In fact, KM Welding continued operations after 2005.

Furthermore, petitioner testified she decided, upon her CPA's advice, to abandon the purported partnership interest. Yet petitioner did not provide evidence of the conversations she had with her CPA. Additionally, she admitted at trial that if she received any profits from KM Welding in the future, she would report the income. Petitioner's remarks suggest that she

believed there was still a possibility she would receive a return on her investment. Accordingly, we find that petitioner did not truly intend to abandon any interest in KM Welding.

Petitioner did not take any affirmative action in 2005 to abandon the purported partnership interest in KM Welding. Petitioner was unable to provide the date on which she abandoned the interest. Petitioner testified that she did not file any public document indicating that she was no longer associated with KM Welding. Additionally, there is no evidence that petitioner informed her purported partners that she was abandoning the partnership interest. We find that petitioner did not take sufficiently identifiable steps to abandon the interest in KM Welding to thereby be entitled to an abandonment loss deduction.

## II. Accuracy-Related Penalty

We turn now to respondent's determination in the deficiency notice that petitioners are liable for the accuracy-related penalty under section 6662(a) and (b)(1). Respondent has the burden of production under section 7491(c) and must come forward with sufficient evidence that it is appropriate to impose the penalty. See Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001).

A taxpayer is liable for an accuracy-related penalty for any portion of an underpayment of income tax attributable to negligence or disregard of rules and regulations, unless he or

she establishes that there was reasonable cause for the underpayment and that he or she acted in good faith.  Secs. 6662(a) and (b)(1), 6664(c)(1).  Negligence is defined as any failure to make a reasonable attempt to comply with the provisions of the Code and includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly.  Sec. 6662(c); sec. 1.6662-3(b)(1), Income Tax Regs.

RMI did not maintain any books or records to substantiate the abandonment loss claimed on RMI's return for 2005.  We find it incredible that petitioner, who is in the business of entering into contracts, would not request written documentation of the KM Welding transaction.  Furthermore, uncorroborated self-serving testimony was the only evidence petitioner presented regarding the abandonment of the purported partnership interest in KM Welding.  We find that petitioners acted negligently in failing to substantiate the abandonment loss, and respondent has met his burden of production.

Notwithstanding that petitioners were negligent, they may avoid the imposition of a penalty if they are able to show that there was a reasonable cause for, and that they acted in good faith with respect to, the underpayment.  See sec. 6664(c).  The determination of whether the taxpayer acted with reasonable cause and in good faith is made by taking into account all the

pertinent facts and circumstances.  See sec. 1.6664-4(b)(1),
Income Tax Regs.

Petitioner testified that she abandoned the KM Welding
partnership interest and claimed a loss deduction for 2005 on the
advice of her CPA.  We do not even have the name of her CPA, nor
do we know what information petitioner provided to the CPA.
Petitioner failed to give us adequate evidence that she acted in
good-faith reliance.  Accordingly, we hold that petitioners are
liable for the accuracy-related penalty under section 6662(a) and
(b)(1) for 2005.

In reaching our holding, we have considered all arguments
made, and, to the extent not mentioned, we conclude that they are
moot, irrelevant, or without merit.

To reflect the foregoing and the concessions of the parties,

Decision will be entered
under Rule 155.