# United States Tax Court

T.C. Memo. 2024-83

KAREN VEERASWAMY,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 23581-22.                    Filed September 4, 2024.

————

Karen Veeraswamy, pro se.

*Heather L. Marello* and *John M. Janusz*, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HOLMES, *Judge*: Karen and Velappan Veeraswamy formed Ashand Enterprises in 2000. Their marriage was failing when Velappan took Ashand into bankruptcy in 2013. But Ashand was a success—when it sold its principal asset in 2014, the proceeds exceeded its liabilities. The Government took the position in bankruptcy court that Karen didn't own any part of Ashand and shouldn't receive any share of Ashand's surplus. Now the Commissioner says she owned 50 percent and needs to include her share of that excess in her taxable income for 2014.

Karen relies on the doctrines of equitable and collateral estoppel to argue that the Commissioner is wrong. The Commissioner wagers that "contradiction is not a sign of falsity, nor the want of contradiction a sign of truth."[1]

---

[1] Blaise Pascal, *Pensées* 104, No. 384 (William Finlayson Trotter trans., J.M. Dent & Sons 1956) (1670).

**Served 09/04/24**

**[\*2]**                              FINDINGS OF FACT

I.       *The Veeraswamys*

Karen Veeraswamy is a member of the Seneca Nation and was living on its reservation in Salamanca, New York, when she petitioned the Court.[2]  She married her husband, Velappan, in 1990.  They started a family and raised two bright children who are now successful adults.

The couple also started a business, Ashand Enterprises, Inc., ("Ashand") in 2000.  They elected to make it an S corporation under section 1362(a).[3]  Even though they don't pay corporate taxes directly, S corporations are required to file information returns to the Commissioner to report the income and deductions which pass through to their owners.  *See* § 6037.

When Ashand was incorporated in 2000, Velappan and Karen each owned 100 shares of the business.  We know this because we have Ashand's list of shareholders, which was memorialized in its first board meeting and in its articles of incorporation.  Karen also says she herself remembers going to a Manhattan attorney's office in 2000 to sign the corporate formation documents with her husband.  We also have Ashand's 2010 Form 1120S, U.S. Income Tax Return for an S Corporation, which showed Karen as a 50-percent shareholder.

Velappan started Ashand as a vehicle for trading tech stocks.  After the dotcom bubble burst, he pivoted to real estate.  Through Ashand, Velappan and Karen bought a building on Ward Avenue in The Bronx in 2005.  The property was Ashand's primary asset.  It had about 70 tenants, including apartment-dwellers and three commercial units.

Velappan served as Ashand's president and all agree that he was the person who ran the business.  Karen, however, did contribute.  She was listed as Ashand's secretary and treasurer.  She helped open the corporate bank accounts, worked in its office, and collected rent from the tenants.  Both spouses served on Ashand's board of directors.

---

[2] The parties stipulated that appellate venue lies in the Second Circuit.  *See* § 7482(b)(1)(A). (All section reference are to the Internal Revenue Code and regulations in effect for the year at issue, and all Rule reference are to the Tax Court Rules of Practice and Procedure, unless we say otherwise).

[3] *See Maines v. Commissioner*, 144 T.C. 123, 125 n.3 (2015) (describing S corporations).

**[*3]**    Even as Ashand was prospering, the Veeraswamys' marriage was not.  Sometime around 2004, Velappan acquired what Karen describes as a "paramour".  He lived with this paramour on one floor of the two-story marital home.  Karen and their children lived on the other.

Things turned darker when Velappan began to abuse Karen and their children.  At least one incident left her hospitalized.  After years of enduring this, Karen moved out in 2011 and filed for divorce.

Despite this personal turmoil, Karen still helped with Ashand's books and sent out eviction notices even after she discovered her husband's adultery in 2004.  But Velappan began to isolate his wife from the business.  He took her off Ashand's bank accounts and attempted to limit her access to the office.

He then used his cutting Karen off from the business in the increasingly acrimonious divorce litigation.  He argued that Ashand wasn't a marital asset because Karen was no longer involved with the company.  Karen apparently took that to mean she was no longer a shareholder in Ashand.  She also began to file her tax returns as married filing separately.

The turmoil from the Veeraswamys' personal life overflowed into their business.  Ashand fell behind on its mortgage payments, and in 2013 Velappan filed for chapter 11 bankruptcy protection on its behalf.[4]

II.    *Ashand's Bankruptcy*

Velappan filed Ashand's petition in the United States Bankruptcy Court for the Eastern District of New York.  In those proceedings, he confirmed Karen's fears and represented to the court that he was Ashand's president and sole owner.

The Veeraswamy children were at this point still young, and Karen had won an order from divorce court that required Velappan to pay support.  Once she got this order, she filed a proof of claim in Ashand's bankruptcy.  Karen did not represent to the bankruptcy court that she was co-owner of Ashand—only that she was entitled to domestic support by way of her marriage to Ashand's purported sole owner, Velappan.  It would, of course, be an unusual corporate debtor that owed

---

[4] Because there were filings for chapter 7, chapter 11, and chapter 13 bankruptcy among the various actors in this case, we'll refer to the chapter 11 bankruptcy as "Ashand's bankruptcy" throughout for the sake of simplicity.

[*4] domestic support to its owner's wife, and the bankruptcy court denied Karen's claim, though it continued to let her participate in the case.

The bankruptcy moved quickly, and in 2014 the trustee assigned to Ashand decided to put the Ward Avenue property up for sale. The property ultimately fetched $7.6 million, more than enough to pay Ashand's debts and leave a nearly $2 million surplus even after expenses.

When there's a surplus, there's usually a line of equity holders with their hands out. But Karen wasn't one of them. There is nowhere in her initial proof of claim any assertion that she was Ashand's co-owner. At this point, Karen didn't believe that she was a shareholder in Ashand. But because Karen remained a party in Ashand's bankruptcy, the bankruptcy court—even though it denied her claim for domestic support—ordered that the surplus from the Ward Avenue sale be put into an escrow account controlled by Karen's attorney until a resolution of the divorce proceedings.

The court entered its final decree in Ashand's bankruptcy case in early 2015. The court stated that the decree "shall not be construed as to settle any issues as to the propriety of payments by the Debtor as between the Debtor's equity holders or parties in interest."

The resolution of these issues would take another bankruptcy proceeding.

III.   *Velappan's Bankruptcy*

Velappan had what seemed to be a very large family-support debt, and it turned out he had a federal tax debt as well. Velappan filed for chapter 13 bankruptcy in 2018. This bankruptcy petition was converted to a chapter 7 bankruptcy on Karen's motion later that year.[5] Karen hadn't received any domestic support from her husband before she filed that motion, and it seemed like a good tactic to enforce her claim.

---

[5] 11 U.S.C. § 1307(c) provides such a procedure for what bankruptcy law terms a "party in interest." A party in interest like Karen might want to convert a chapter 13 bankruptcy—which generally allows a debtor to keep his property and reorganize his debts to be paid over time—to a chapter 7 bankruptcy that results in a liquidation of assets to more immediately pay creditors. *Chapter 13 – Bankruptcy Basics*, United States Courts, https://www.uscourts.gov/services-forms/bankruptcy/bankruptcy-basics/chapter-13-bankruptcy-basics (last visited July 19, 2024).

**[\*5]** Both the Commissioner and Karen filed proofs of claim in Velappan's bankruptcy.[6] The Commissioner's claim was for Velappan's income-tax liabilities for 2012–15 that he had assessed. (These were not joint debts—remember, during those years Karen filed as married filing separately.) Karen's proof of claim was for the domestic support that Velappan still owed her.

A year into this bankruptcy battle, in February 2019, Velappan had a heart attack and died. The divorce case was now moot, and the local surrogate's court appointed Karen as the administrator of her late husband's estate. As she began sorting things out, Karen discovered corporate documents in a cockroach-infested basement that showed she had remained a 50-percent shareholder in Ashand. Velappan had lied to the courts, to creditors, and to her.

IV.    *The Bankruptcies Converge*

Karen's discovery created a cascade of filings from the trustees and parties in interest in the two bankruptcies, as well as in the divorce proceedings. The trustee in Velappan's bankruptcy filed an amended complaint to obtain the surplus funds from Ashand's bankruptcy that were still held in escrow by Karen's attorney. The trustee's theory was that the old corporate records should be ignored, and that any surplus from Ashand was the sole property of Velappan because Velappan had sworn that it was so and was in no position to be examined on the subject.

Karen opposed this motion but was unable to stop the release of the funds from escrow. The bankruptcy judge in Velappan's case directed the turnover of the money in escrow to the trustee for distribution.

But Karen had another option. A week after the court ordered the turnover of the funds, she submitted an amended proof of claim in Velappan's bankruptcy. In addition to the previous claim for domestic support, Karen sought $950,000 as an equity distribution from Ashand's sale of the Ward Avenue building.

---

[6] Throughout the various bankruptcies involving Velappan and Ashand, the government's interests were represented by both the Department of Justice and the Commissioner, with the latter filing this proof of claim for taxes or penalties owed to the IRS pursuant to 11 U.S.C. § 507(a)(8).

**[\*6]**   She specifically asserted that she was a 50-percent shareholder of Ashand.  She signed this claim under penalty of perjury.  And she attached with the claim Ashand's corporate-formation documents as proof.

She also asserted her part ownership of Ashand in an answer to an adversary complaint that the trustee filed in Velappan's bankruptcy. In the answer and a subsequent addendum she again stated that she was a 50-percent shareholder in Ashand and, as proof, attached Ashand's 2010 Form 1120S and her own Schedule K–1, Shareholder's Share of Income, Deductions, Credits, etc.[7]

That wasn't all.  She also moved to reopen Ashand's bankruptcy— apparently as a backup measure to somehow recover the surplus should her efforts in Velappan's bankruptcy fail.  Karen argued in that motion as well that she was a 50-percent shareholder of Ashand.

The Department of Justice intervened in Ashand's bankruptcy.  It objected to Karen's motion, asserting that Karen should be estopped from arguing that she was a 50-percent shareholder in Ashand because she had been involved in the bankruptcy going back to 2013 and had never before challenged Velappan's sole ownership of the corporation. This objection sought to keep the status quo on *res judicata* grounds that Velappan was Ashand's sole shareholder.

In the end, the trustee in Velappan's bankruptcy negotiated a settlement with Karen in the interest of the estate.  The DOJ, on behalf of the Commissioner, objected because it wanted to make sure somebody recognized the capital gain from the sale of Ashand's property in the corporate bankruptcy.

In March 2022 the court overseeing Velappan's bankruptcy approved a final settlement.  The court reclassified Karen's claims for domestic support and equity disbursement as secured claims.  This put her at the head of the line of her late husband's other, unsecured creditors.  The trustee then paid Karen $486,038 to satisfy her equity claim.  She also received $480,000 in domestic support.  Karen didn't report either figure in her 2022 tax return, and she didn't file a return for her 2014 tax year.

---

[7] A Schedule K–1 is a form the IRS requires a firm to send to its owners so they can report their share of the firm's income and losses.  33 Am. Jur. 2d *Federal Taxation* § 2589.1, Westlaw (database updated May 2024).

**[\*7]**   The Government was paid only 60 percent of its priority unsecured claim and nothing of its general $480,744 unsecured claim.[8]

## V.   *Audit and Trial*

### A.   *The Commissioner Looks into Ashand*

It looked like the gain from the sale of Ashand's assets was going to go untaxed.  But the Commissioner has his ways.  Even before Velappan died, the Commissioner began an audit of Ashand for the 2014 tax year.  This audit ended in 2017, but we don't know how because the revenue agent (RA) testified only that the audit occurred.  We do know that she reopened the audit in February 2022 after she received the bankruptcy-court filings in which Karen claimed that she owned half of Ashand.

To reconstruct Ashand's 2014 income—remember that Ashand didn't file a tax return for that year—the Commissioner relied on Ashand's own filings in the bankruptcy court.  These included various bank and expense statements, operating reports, and canceled checks from the beginning of 2014 until the Ward Avenue property was sold that summer.  He also conducted a bank-deposits analysis as part of his resumed audit of Ashand.

Using this information, the Commissioner determined that Ashand received nearly $400,000 in gross—and a bit more than $80,000 in net—rental income in 2014.  He allowed all of the expenses reported by Ashand in its bankruptcy filings as part of this calculation.

The RA also determined that Ashand realized a $1.9 million capital gain in 2014 from the sale of the building, half of which was later attributed to Karen. Karen submitted the property-transfer report as proof of Ashand's basis in the Ward Avenue property but didn't submit any other documents regarding basis or testify about capital improvements or depreciation of the building.  The RA used the Veeraswamys' $5 million purchase price as basis, and adjusted the gross sales price by the amount of improvement costs that she herself could find.

---

[8] In bankruptcy law, certain tax liabilities are granted "priority" status over other unsecured claims.  *See* United States Courts, *supra* note 5.

**[\*8]**    B.    *The Commissioner Looks into Karen*

Once the Commissioner started looking at Ashand's 2014 tax bill, it was probably inevitable that he would also look into Karen's 2014 tax bill. Her name was prominent in Ashand's bankruptcy, and she now was saying she was a 50-percent shareholder of Ashand.

Karen had not filed a 2014 income-tax return, so the Commissioner used his power under section 6020(b) to prepare a substitute return. This return used the calculations and assumptions derived from Ashand's bankruptcy filings. Remember that Ashand was an S corporation—a kind of passthrough entity—so the Commissioner assigned half of Ashand's net rental income and half its capital gain to Karen.

The Commissioner relied on the bank-deposits analysis that the RA conducted using Ashand's statements submitted in bankruptcy court as an alternative position. And he also asserted penalties for failure to timely file and failure to timely pay in his notice of deficiency.

Karen filed a timely petition.[9]  Before the case was tried, the Commissioner successfully moved under Rule 91(f) to admit many of Ashand's and Karen's filings in the bankruptcy proceedings as if stipulated by the parties.

The main question for us to decide is whether Karen was in fact a 50-percent shareholder in Ashand in 2014. She argues that she wasn't a shareholder but just the "non-moneyed" spouse who received no income from Ashand once she filed for divorce.

OPINION

I.    *Who Owned Ashand in 2014?*

A.    *S Corporation Ownership*

Some shareholders, like Ashand's, can have their entities elect under the Code to be treated as S corporations. Once approved by the IRS, the election remains effective for all later years. § 1362(c); *see Chan v. Commissioner*, 122 T.C.M. (CCH) 355, 357 (2021). Not even filing a

---

[9] The Commissioner has since conceded that she isn't liable for an addition to tax for failure to pay estimated taxes pursuant to section 6654(e)(2). Karen does not contest the recognition of $139 in qualified dividend income. The Commissioner concedes a $38 withholding credit.

[*9] bankruptcy petition terminates this shareholder-level election of S corporation status for tax purposes. *Mourad v. Commissioner*, 121 T.C. 1, 4 (2003), *aff'd*, 387 F.3d 27 (1st Cir. 2004).

### 1. *Whether It Is More Likely than Not that Karen Owned Ashand in 2014*

A shareholder is ordinarily considered a person who would have to include in gross income the distributions with respect to the stock of the corporation. Treas. Reg. § 1.1361-1(e)(1). Looking at the corporate history of Ashand, we know from the minutes of Ashand's first board meeting that Karen and Velappan each owned 100 shares. We know that they also did in 2010, as there are Forms 1120S and Schedules K–1 showing their 100-share ownership.

We don't have either of these forms for 2014, though, because Ashand didn't file a return for that year. But there are so many other filed documents that we can look to during this period—we have the corporate records, tax returns, bankruptcy exhibits, and family-court exhibits. None of them show that Ashand's ownership changed between its incorporation and 2014.

*Hightower v. Commissioner*, 90 T.C.M (CCH) 530 (2005), *aff'd*, 266 F. App'x 646 (9th Cir. 2008), provides a useful comparison. There, a taxpayer petitioned for a redetermination of a deficiency in connection with an S corporation buyout to which he was opposed. Like Karen, the taxpayer in *Hightower* had a souring relationship with the S corporation's other shareholder and had been excluded from the benefits of owning the stock. *See id.* at 531, 535.

We held that, despite the exclusion, the taxpayer was still a shareholder. Our S corporation law doesn't permit the income of an S corporation to evade passthrough or ownership treatment because of a poor relationship between the shareholders. *Id.* at 535.

We therefore find that it's more likely than not that Karen was a 50-percent shareholder of Ashand in 2014.

### 2. *Whether Karen Abandoned Her Ownership Interest in Ashand*

We recognize that Karen represented herself in this case. While she didn't explicitly argue this in her brief, she did argue during trial that she didn't believe she continued to own Ashand shares after she

**[\*10]** filed for divorce because she didn't receive distributions of Ashand's income. We will liberally construe this as an argument that Karen had abandoned her interest in Ashand. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*) (construing documents filed by *pro se* litigants liberally).

We've held that a partner can abandon his partnership interest for tax purposes. *See Citron v. Commissioner*, 97 T.C. 200, 213 (1991). And like a partnership, Ashand is a passthrough entity in which a shareholder can abandon his or her interest. *See Penland v. Commissioner*, 102 T.C.M. (CCH) 522, 527 n.18 (2011). But an affirmative act based on all of the facts and circumstances is required for abandonment of an ownership interest—intent isn't enough. *Milton v. Commissioner*, 98 T.C.M. (CCH) 386, 387 (2009) (citing *United Cal. Bank v. Commissioner*, 41 T.C. 437 (1964), *aff'd per curiam*, 340 F.2d 320 (9th Cir. 1965)).

Abandonment also generally requires a taxpayer to relinquish the asset and any future claims to it. *Tsakopoulos v. Commissioner*, 83 T.C.M. (CCH) 1064, 1069 (2002), *aff'd*, 63 F. App'x 400 (9th Cir. 2003). When the asset is an intangible property interest—such as shares in an S corporation—we look for an express manifestation of abandonment. *Citron*, 97 T.C. at 209–10.

We find that Karen didn't abandon her interest in Ashand. Not only did she not make an affirmative act of abandonment, but she also actively pursued her ownership interest in the bankruptcy proceedings. For tax purposes—if not also for logical consistency—Karen either was or wasn't a shareholder of Ashand in 2014.

She says that she wasn't in this case, but she argued in Velappan's bankruptcy proceedings that she was. Even if we take as a given that she only discovered her ownership in the midst of her late husband's bankruptcy case, her amended proof of claim represented her final, considered position in those proceedings. We think this also shows it's more likely than not that Karen owned 50 percent of Ashand in 2014.

B.    *Estoppel in Bankruptcy Court*

Karen, however, has a backup argument arising from the Government's own inconsistent positions over the years. She says that the Government, through its attempts in Velappan's bankruptcy proceedings to prevent the distribution of Ashand's surplus to her, has already argued that she wasn't an owner of Ashand. Therefore, she

**[\*11]** says, the Commissioner can't say otherwise in this case under the doctrine of equitable estoppel or collateral estoppel.[10]

### 1. *Equitable estoppel*

Equitable estoppel precludes a party from "denying his own acts or representations which induced another to act to his detriment." *Howe v. Commissioner*, 119 T.C.M. (CCH) 1530, 1534 (2020) (citing *Hofstetter v. Commissioner*, 98 T.C. 695, 700 (1992)).

To equitably estop the Commissioner from arguing that Karen owned Ashand in 2014, we need to find:

- A false representation or misleading silence by the Government;

- an error in a statement of fact and not an opinion or statement of law;

- that Karen, as the party invoking equitable estoppel, was ignorant of the true facts;

- that she reasonably relied on a false or misleading statement by the Government; and

- that she incurred a detriment as a result.

*Estate of Telesmanich v. Commissioner*, 102 T.C.M. (CCH) 114, 115 (2011) (citing *Norfolk S. Corp. v. Commissioner*, 104 T.C. 13, 60 (1995), *supplemented by* 104 T.C. 417 (1995), *aff'd*, 140 F.3d 240 (4th Cir. 1998)).

It is also more difficult to assert equitable estoppel against the Government. Even before getting to the five requirements above, Karen needs to show that the Government engaged in affirmative misconduct

---

[10] Her answering brief actually used the term *res judicata* rather than collateral estoppel. The doctrine of *res judicata*—sometimes called claim preclusion—bars later litigation if an earlier decision was (1) a final judgment on the merits; (2) by a court of competent jurisdiction; (3) in a case involving the same parties or their privies; and (4) involving the same cause of action. *Adelphia Recovery Tr. v. HSBC Bank USA, Nat'l Ass'n* (*In re Adelphia Recovery Tr.*), 634 F.3d 678, 694 (2d Cir. 2011).

Bankruptcy and Tax Court cases are different and provide different relief. This means they do not involve the same cause of action, so *res judicata* doesn't apply. We think Karen is really arguing that the Commissioner should be collaterally estopped from arguing that she was an owner of Ashand in 2014. *See* Rule 31(d) ("A pleading must be construed so as to do justice."); *see also Erickson*, 551 U.S. at 94.

**[\*12]** going beyond mere negligence, that its wrongful acts will cause a serious injustice, and that the public interest won't suffer undue damage if a court estops the Government. *See Howe*, 119 T.C.M. (CCH) at 1534.

We can find no bad faith or misconduct for the Government's part in its conduct during Velappan's bankruptcy. The Department of Justice, in pursuing in bankruptcy court collection of Velappan's assessed personal income-tax liability, was just acting on the information it had about Ashand's ownership at the time. It wasn't until 2019 when Karen, by opposing the bankruptcy trustee's motion to obtain the Ward Avenue surplus and submitting an amended proof of claim asserting that she owned half of Ashand, that the Government learned of her claim to be a half owner.

The other elements of equitable estoppel just aren't there either. Karen couldn't have been ignorant of the true facts about her ownership interest when the Commissioner contested her amended proof of claim because she had by that time discovered and possessed the corporate documents showing that she was a 50-percent shareholder. And she didn't incur a detriment from the Government's contesting her ownership in bankruptcy—the bankruptcy court ruled against the Department of Justice and she in fact received her share of the surplus.

The Commissioner isn't equitably estopped from asserting Karen's ownership interest.

### 2. *Collateral estoppel*

Collateral estoppel—sometimes called issue preclusion—is a legal doctrine which, like *res judicata*, limits parties' ability to try the same issue that they have already litigated. Once an issue of fact or law is actually and necessarily determined by a court, that issue is deemed "conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Monahan v. Commissioner*, 109 T.C. 235, 240 (1997) (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).

To preclude the Government from arguing that Karen was an owner of Ashand in 2014 under collateral estoppel, we need to find five facts. They are:

**[\*13]** • The ownership issue in this case must be identical to the issue decided in bankruptcy court;

• The bankruptcy court was of competent jurisdiction and rendered a final judgment on the issue;

• The Commissioner was a party in the bankruptcy court or in privity with a party there;

• The parties actually litigated the ownership issue and the resolution of it must have been essential to the bankruptcy court decision; and

• The controlling facts and legal principles haven't changed.

*See Hi-Q Personnel, Inc. v. Commissioner*, 132 T.C. 279, 289 (2009) (citing *Monahan*, 109 T.C. at 240).

We find that the first element is met. Whether Karen was a 50-percent shareholder in Ashand is the identical issue here and in the Ashand bankruptcy proceedings, albeit with different consequences. And we take judicial notice that the bankruptcy court had jurisdiction over the bankruptcy case.

But the bankruptcy court didn't issue a final judgment on the ownership issue in the chapter 11 case. Remember that by the time Karen rediscovered the corporate documents following her husband's death Ashand's bankruptcy had closed. She sought to reopen that bankruptcy and the Department of Justice objected, but the court made no ruling that she was a 50-percent shareholder of Ashand.

As for Velappan's bankruptcy, that case too ended without a final judgment on the ownership issue. Karen and the trustee *settled* her claim and she received $486,038 to satisfy her equity interest in Ashand, among other claims. The bankruptcy court approved the settlement, but its final decree makes no mention of the ownership issue. As a result, Karen can't show all of the elements needed to collaterally estop the Commissioner. He may therefore argue in this Tax Court case that Karen owned half of Ashand in 2014 and—as found above—we find it more likely than not that she in fact did.

**[*14]** II.  *Karen's Income and Expenses from Ashand*

Because we find it more likely than not that Karen was a 50-percent shareholder and because we've determined that the Commissioner isn't equitably or collaterally estopped from arguing that she was, we need to figure out Karen's income from Ashand.

Ashand was an S corporation.  An S corporation shareholder generally determines her tax liability by taking into account the *pro rata* share of the S corporation's income, losses, deductions, and credits. § 1366(a)(1).

This means Karen has to include in her income half of Ashand's income.  This is the case even if she didn't receive that share as a distribution back in 2014.

The Commissioner satisfied his initial burden in linking Ashand's income to Karen, *see Nelson v. Commissioner*, 115 T.C.M. (CCH) 1538, 1539 (2018), by showing that Karen was a shareholder in Ashand, which realized a long-term capital gain in 2014 from the sale of the Ward Avenue property.

His determination included basis in the amount of $5.6 million. Karen didn't submit any documents showing improvements to the Ward Avenue property that would affect Ashand's basis, and she has not argued that the Commissioner's basis calculations are incorrect.  That was her burden under Rule 142(a)(1), and she hasn't carried it.

As for the 2014 rental income from the Ward Avenue property, the Commissioner determined that Ashand received $82,279 in net rental income in 2014 before the building was sold.  In arriving at that figure, he allowed all of the expenses reported by Ashand in its bankruptcy filings.  Karen did not offer evidence to refute these calculations, either, so we find the Commissioner's determination on this point more likely than not true.  *See Tokarski v. Commissioner*, 87 T.C. 74, 76–77 (1986).

We therefore sustain the Commissioner's calculations of Karen's income.

An S corporation shareholder may deduct her share of the corporation's expenses.  The Commissioner calculated allowable expenses of $304,200.  Karen offered no evidence to challenge this

**[\*15]** calculation, so that's the number we'll use.  Half of these expenses pass through to Karen.

III.    *Additions to Tax*

That leaves additions to tax.  The Commissioner determined additions to tax under section 6651(a)(1) for failing to timely file a return and section 6651(a)(2) for failing to timely pay the amount shown on a return.

Karen did not argue that she had reasonable cause for failure to file.  And, while she spoke to an accountant during the years of her company's and her husband's bankruptcies, there's no evidence that this accountant advised her that she didn't have a filing obligation for 2014.

We'll sustain the Commissioner's additions to tax.

IV.    *Conclusion*

Karen was a 50-percent shareholder in Ashand in 2014.  She must recognize her share of Ashand's net income.  Each side conceded other issues, so

*Decision will be entered under Rule 155.*